Luther HUMPHREY

v.

SOUTHWESTERN PORTLAND CE-
MENT COMPANY.

No. MO-71-CA-89.

United States District Court,
W. D. Texas,
Midland-Odessa Division.

Feb. 1, 1973.

Motion to Amend and Order Denying

Motion April 12, 1973.

Robert E. Hoblit, Warren Burnett Associated, Odessa, Tex., for plaintiff.

W. A. Thurmond, Scott, Hulse, Marshall & Feuille, El Paso, Tex., for defendant.

## MEMORANDUM OPINION OVERRULING DEFENDANT'S MOTION TO STRIKE

SUTTLE, District Judge.

This case is based on the Civil Rights Act of 1964. It arises from a decision by the defendant to promote a white employee to a maintenance job instead of promoting a black.

After a non-jury trial had been held, on the 3rd day of January, 1973 a motion was filed to strike a part of the plaintiff's second amended complaint. In addition to this request to strike, the motion set forth the opposition of the defendant to an Order of the Court which sua sponte, reopened the trial. Although the procedural setting of this motion is somewhat confusing, it substantively questions the plaintiff's claim for relief. Therefore, the Court will treat the motion separately, apart from the findings of fact and conclusions of law required by Rule 52(a) F.R.Civ.P., and will set forth its ruling in full.

The question raised concerns the type of injuries that are compensable in private Civil Rights Act suits. On November 17, 1971, the plaintiff filed a complaint based on an act of racial discrimination. Thereafter, in an amended complaint filed in April of 1972, he sought to recover damages for mental distress.

The defendant objected to any recognition of these injuries and both sides were ordered to brief the question. But they were unable to establish, with any assurance, the type of injuries which could properly be included in a case brought under the Act.

In this posture, on June 13, 1972, the case proceeded to trial. Evidence of mental distress was received. That distress is not unknown when discrimination has occurred. See, for example, Chance v. Frank's Beauty Salon, 35 A. D.2d 304, 316 N.Y.S.2d 236 (1970) noted in 35 Albany L.Rev. 782 (1970); Massachusetts Commission Against Discrimination v. Franzaroli, 357 Mass. 112, 256 N.E.2d 311 (1970) noted in 49 N.C.L. Rev. 221 (1970), and Commission on Human Rights v. Knox Realty Co., 56 Misc.2d 806, 290 N.Y.S.2d 633 (1968). But as the trial progressed it became more apparent that the psychic harm which might accompany an act of discrimination might be greater than would first appear. For the loss of a job because of discrimination means more than the loss of just a wage. It means the loss of a sense of achievement and the loss of a chance to learn. Discrimination is a vicious act. It may destroy hope and any trace of self-respect. That, and not the loss of pay, is perhaps the injury which is felt the most and the one which is the greatest.

Although these injuries cannot be seen, they nevertheless may be real. See generally, Duda, Damages for Mental Suffering in Discrimination Cases, 15 Clev.Mar.L.Rev. 1 (1966). Whether they may be recovered under the Civil Rights Act, however, raises a different question entirely. Before that question could be reached in this particular case, justice required that the facts be fully established. For the trial left the Court with only a suggestion of the damage that had occurred. Therefore, after the trial had ended, the Court, sua sponte, ordered the case reopened to record additional evidence. The plaintiff then amended his complaint a second time to encompass the questions raised, while the defendant moved with the instant motion to strike that amendment and to lodge its opposition.

█ A trial is, of course, a search for truth. And it is the trial judge who is responsible for its success. Here, if the injuries occurred which seemed apparent and if recovery was not foreclosed, the plaintiff would be entitled to recover damages for all of the injuries which he sustained. See Rule 15(b) F.R.C.P. In this unsettled area, justice required then that the trial Court itself reopen the case to allow the plaintiff a chance to prove all of the damage that had occurred. The opposition of the defendant was therefore overruled and a hearing was held where additional evidence was received. Based on that evidence, the question of whether psychic injuries are compensable is ripe for a decision.

█ A foundation upon which to base that decision, however, is almost nonexistent. The language of the Act is not controlling. It provides that:

> If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, *and order such affirmative action as may be appropriate,* which may include reinstatement or hiring of employees, with or without back pay . . . . (emphasis added) 42 U.S.C. § 2000e–5(g) [1]

---

1. After this suit was filed, this section of the Act was amended. It now provides that:
 > If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay (payable by the employer, employment agency, or labor organization, as the case

While in other contexts this language has been broadly construed, see for example, Local 53 of Int. Ass'n of Heat & Frost I & A Wkrs. v. Vogler, 407 F.2d 1047, 1052 (5th Cir. 1969), no case has been cited or found which focuses squarely on this issue. In addition, a review of the legislative history and the thoughts of the drafters leaves the question in doubt. See 1964 U.S. Code Cong. & Admin.News, p. 2355 et seq.

The defendant relies on Tooles v. Kellogg, 336 F.Supp. 14 (D.Neb.1972) and an excellent article, Developments in the Law—Employment Discrimination and Title VII of the Civil Rights Act of 1964. 84 Harv.L.Rev. 1109 (1971) to support its position that psychic injuries are not compensable. The plaintiff relies on the facts. The Court concludes that the purpose of the Act will best be served if all of the injuries which are caused by discrimination are entitled to recognition.

The purpose of the Act obviously is to end discrimination. See Griggs v. Duke Power Co., 401 U.S. 424, 429–430, 91 S. Ct. 849, 28 L.Ed.2d 158 (1970). To achieve that goal, Congress granted individuals who have been harmed by discrimination the right to seek redress by bringing civil suits. First, because individuals adorn the "mantel of the sovereign" to prosecute illegality when they institute such suits. See Jenkins v. United Gas Corporation, 400 F.2d 28, 32 (5th Cir. 1968). And second, because such suits provide those who have been injured with the chance to be made whole. See Bowe v. Colgate-Palmolive Co., 416 F.2d 711 (7th Cir. 1969).

These reasons will be better served if all the injuries which have been inflicted may form the basis for private suits. In cases such as the instant one, where an increase in pay is slight but the damage may be real, such a recognition would encourage "prosecutions" which might have been forgotten. The effec-

tiveness of private litigants would thereby be increased. Moreover, if a reason for private civil suits is the desire to make those injured whole, it is foolish to ignore the injuries which have actually been inflicted. The fact that discrimination has caused an injury makes the suffering no less real.

Accordingly, the Court finds that psychic injuries are proper in Civil Rights Act suits. Difficulties of proof are readily apparent but they arise only after discrimination has been shown. They do not create the wrong which forms the basis for the suit. Once that wrong has been established, the remedies available to a plaintiff should be effective and complete. In addition, it is now well settled that a cause of action based on racial discrimination may be brought under either 42 U.S.C. § 1981 or 42 U.S.C. § 2000e, or it may be brought under both. Sanders v. Dobbs Houses, Inc., 431 F.2d 1097 (5th Cir. 1970), cert. denied, 401 U.S. 948, 91 S.Ct. 935, 28 L. Ed.2d 231 (1971). The remedies available under the former statute include compensatory damages. See Sullivan v. Little Hunting Park, 396 U.S. 229, 90 S.Ct. 400, 24 L.Ed.2d 386 (1969). And the fact that a plaintiff has based his claim only on the latter, and has sought conciliation, should not result in the punishment inflicted when damages are ignored.

For these reasons, the motion of the defendant to strike the pleadings, must be, and the same is hereby, denied.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This case has been brought to recover damages for an act of racial discrimination. The plaintiff, Luther Humphrey, contends that he was denied a promotion by the defendant because he is a negro. The defendant disclaims that the race of the plaintiff played a role in the award. It contends that another employee re-

may be, responsible for the unlawful employment practice), *or any other equitable relief as the court deems appropriate.* (Emphasis added)

The amendment, however, is prospective and has no application here. See Pub.L. 92–261 § 14 (1972).

ceived the promotion because of his qualifications.

On November 13 and 14, 1972, a trial was held before the Court. Thereafter, on January 2, 1973, the trial was reopened to record additional evidence.[2] As in most trials, the testimony was conflicting. But in this case, after observing their demeanor, the Court found the credibility of the various witnesses to be diverse. Therefore, after judging that credibility and the testimony and evidence produced by the parties, the Court, pursuant to Rule 52(a) F.R.C.P., now finds and rules as follows:

## FACTS

1. The defendant, Southwestern Portland Cement Company, is a manufacturer of portland cement. From its principal office in California, it operates several cement plants throughout the United States, including one in Odessa, Texas.

2. In 1968, the plaintiff was employed at this Odessa plant along with approximately 70 others. He had been hired by the defendant in 1964 and, during the period of his employment, he had worked in the plant as a packer.

3. A packer, using a machine, fills sacks with dry cement. He must often lift or move the sacks after they have been filled and thus, it is often heavy and difficult work. Because of this, and his advancing middle age, the plaintiff sought to be promoted to a physically less demanding job.

4. On May 14, 1968, an opening arose in such a job as a special utilityman (mech). That is a maintenance man who inspects and repairs the machines of the plant and who assists more advanced maintenance men in making major repairs.

5. Notice of the opening was placed on bulletin boards within the plant in order to attract the attention of any employee who wished to bid on the job. The notice described the duties of the job as well as the qualifications which the defendant desired.

6. The defendant desired an applicant who was a high school graduate or who held an equivalent degree, who was able to read simple mechanical drawings and use standard measuring tools, and who was capable of making minor plant and equipment repairs. If no applicants met the qualifications, initially, a break-in period was to be awarded to allow a man to gain these skills while working on the job.

7. The plaintiff submitted a bid for the job along with another worker. Their bids, which were submitted on company forms, set forth their qualifications. These qualifications and the employment records of the men were then reviewed by company officials.

8. Based on the qualifications which the defendant desired, this material showed that neither man was prepared to step immediately into the job, but that both were equally capable of learning the skills which the job required.

9. The material which concerned the plaintiff showed that he had completed the 10th grade and had some mechanical training. That prior to being employed by the defendant, he had been a general laborer. That he had been employed by the defendant for four years and had occasionally worked as a special utilityman. And that, in general, he was a willing worker who had performed his job with pride.

10. The material which concerned the other employee showed that he had a G.E.D. degree and training in the maintenance of radios, radar, and trucks. That he was taking courses in machine shop practice and welding and had previously been a mechanic. And that he had been employed by the defendant for about 5 months and during that time had performed the jobs assigned to him with a minimum of supervision and a better than average degree of skill.

2. See the Memorandum Opinion of the Court overruling defendant's motion to strike entered this date for the history and purpose of this additional hearing.

11. On May 20, 1968, the officials who reviewed the credentials of these two men chose the latter to receive the promotion. In part, their decision was based upon his apparent capacity to perform the job. But their decision to award him the promotion, rather than the plaintiff, was also based on the plaintiff's race; i. e. the fact that he is a negro.[3]

12. The following day, the employee who received the promotion began to work as a special utilityman. The plaintiff believed that he had been denied the promotion because of discrimination. And after several days of emotional suffering, for which he received tranquilization, he complained to the Director of Personnel.

13. Fearing that a charge of discrimination might be made, a test was ordered given. In addition, the bid of the employee who was awarded the promotion was altered to reflect the fact that he had received additional training.[4]

14. On June 5, 1968, the men were given a test which fairly questioned their knowledge about the work and the tools of a special utilityman. Although neither did well, the plaintiff made the lower score. But the results of the test were weighed against him because the employee who received the promotion had already worked at the job.

15. Because he failed to perform satisfactorily on this test, however, on July 5, 1968 that employee was given a second test and his score greatly improved.

16. The plaintiff was not offered the chance to retake the test. The defendant believed that his first score was sufficiently low to support its decision. The plaintiff, however, believed that his race was once again the reason and on

August 28, 1968, he filed a charge of discrimination against the defendant with the E.E.O.C.

17. While that charge was pending with the E.E.O.C., the plaintiff continued to work as a packer. On January 6, 1971, while working on the job, he was injured and is now totally and permanently disabled.

18. The failure of the plaintiff to be considered for the job foreclosed the benefits which it would bring. Those benefits include a raise in pay of $.26 per hour. Therefore, from the date that he was denied the job until the date that he was injured, the plaintiff lost a chance to earn an additional $1351.92.

19. In addition to this loss of pay, the plaintiff lost a chance to learn and to gain experience which was worth $2500.00. Moreover, he suffered emotional distress for which $1200.00 is now required to make him whole.

## LAW

1. Prior to bringing this suit, the plaintiff timely exhausted the conciliatory procedure set out in 42 U.S.C. § 2000e–5(d). He has complained of a series of acts which he contends was a continuing course of conduct. That conduct ended on July 5, 1968, when the employee who received the promotion was given the second test. The plaintiff thereafter filed a charge of discrimination with the E.E.O.C. on August 28, 1968. This charge was filed within the time allowed. See Belt v. Johnson Motor Lines, 458 F.2d 443, 445 (5th Cir. 1972). The simple fact that it was not subscribed to by the plaintiff until October 30, 1968, did not prejudice the defendant in any way and is clearly not controlling. Sanchez v. Standard

---

3. The Court reaches this conclusion despite the defendant's vocal policy of being an equal opportunity employer and statistically hiring a proportionate number of negroes. See, Terrell v. Feldstein Company, Inc., 468 F.2d 910 (5th Cir. 1972) and Hailes v. United Air Lines, 464 F.2d 1006 (5th Cir. 1972).

4. Thus, the foundation upon which the defendant's experts based their opinions is destroyed. The qualifications upon which their opinions are based were not those reviewed by company officials when the promotion was awarded.

Brands, Inc., 431 F.2d 455, 461 (5th Cir. 1970).

2. The principal act of which the plaintiff complained in the charge which he filed, i. e. the initial award of the job, was an intentional act of discrimination. He was not given the promotional consideration which the other employee received because he is a negro. Thus, an artificial and impenetrable employment barrier was erected by the defendant. It thereby intentionally violated § 2000e–2(a)(1) of the Civil Rights Act and is subject to liability.

3. That liability may include an award of back pay. 42 U.S.C. § 2000e–5(g). The defendant has not shown by clear and convincing evidence that the plaintiff, had he not been a negro, would not have received the initial award. Therefore, the defendant has not shown that this discrimination did not affect the plaintiff's career. The plaintiff is accordingly entitled to recover $1351.92, which he might have received as an increase in pay had he been fairly treated. See, by implication, Cooper v. Allen, 467 F.2d 836, 840 (5th Cir. 1972).

4. Moreover, the plaintiff is entitled to recover the psychic losses which he sustained as a result of the defendant's discrimination.[5] He is therefore entitled to $2500.00 damages for the loss of experience which he sustained and $1200.00 for the emotional anguish he has suffered.

5. Finally, because the defendant's acts in the context of this case have been "unreasonable and obdurately obstinate," the plaintiff is entitled to attorneys fees. The Court finds the reasonable value of those fees to be $4000.-00. In addition, the plaintiffs' attorney shall recover his expenses from the defendant and defendant shall be taxed the costs of court. See Weeks v. Southern Bell Telephone & Telegraph Co., 467 F.2d 95 (5th Cir. 1972), and Jinks v. Mays, 464 F.2d 1223 (5th Cir. 1972).

### ORDER DETERMINING MOTION TO AMEND FINDINGS AND MAKE ADDITIONAL FINDINGS

On this the 12th day of April, 1973, came on for consideration and hearing a motion by the defendant pursuant to Rule 52(b) F.R.C.P. to amend the Findings of Fact and Conclusions of Law entered in the above cause. The Court, after considering the motion, the comments of counsel, and after reconsidering the Findings of Fact and Conclusions of Law, hereby finds and rules as follows:

### I.

The defendant first contends that the Court should include a trial stipulation within its Findings of Fact that Howard Dennis, who, rather than the plaintiff, received the promotion in question, "was qualified to fill the job he bid on at the time he bid on the job." The fact that Mr. Dennis was qualified to fill the job was agreed to by the parties. But it was not included within the Court's Findings of Fact because it was not germane.

The Court has found that:

The material [upon which the promotional decision was based] which concerned [Howard Dennis] showed that he had a G.E.D. degree and training in the maintenance of radios, radar, and trucks. That he was taking courses in machine shop practice and welding and had previously been a mechanic. And that he had been employed by the defendant for about 5 months and during that time had performed the jobs assigned to him with a minimum of supervision and a better than average degree of skill.

And the Court has found that:

Based on the qualifications which the defendant desired, this material showed that neither man was prepared to step immediately into the job, but that both were equally capable of

---

5. See the Memorandum Opinion of the Court overruling defendant's motion to strike entered this date.

learning the skills which the job required.

 Thus, the actual although undisclosed, qualifications of Mr. Dennis were not considered by company officials at the time the decision to award him the promotion was made. And because those qualifications were not considered, they are of no consequence in determining whether the decision of the officials to award him the promotion instead of the plaintiff was based in part on the plaintiff's race. The fact that he was qualified to fill the job was therefore properly excluded from the Court's original Findings of Fact and will not be added now.

## II.

The defendant also contends that the Court should include the fact within its Findings that the job of special utilityman (mech) entails work throughout its plant. It is clear that a special utilityman (mech) must work in many areas of the plant. This would seem implicit in the Court's finding that:

On May 14, 1968, an opening arose in such a job as a special utilityman (mech). That is a maintenance man who inspects and repairs the machines of the plant and who assists more advanced maintenance men in making major repairs.

Correspondingly, it would seem that there is no need now to include the specific fact within the Findings that a special utilityman (mech) must work throughout the plant.

## III.

The defendant next contends that the Court should amend its Finding that the material reviewed by company officials which reflected the qualifications of the plaintiff showed that he "had occasionally worked as a special utilityman." The defendant contends that the evidence shows that the plaintiff had "only on occasion assisted the special utilityman (mech) in the performance of the job in the packhouse."

But this contention is beside the mark. First, the bid submitted by the plaintiff reflected that he "had worked and assisted at this job since being employed [at the plant]." It did not reflect the limitations the defendant suggests. And second, those limitations were not known by company officials at the time the decision was made not to award the promotion to the plaintiff. The bid submitted by the plaintiff reflected only that he:

[h]ad completed the 10th grade and had some mechanical training. That prior to being employed by the defendant, he had been a general laborer. That he had been employed by the defendant for four years and had occasionally worked as a special utilityman. And that, in general, he was a willing worker who had performed his job with pride.

Hence, the officials who reviewed the bid were not aware of the fact that the plaintiff "had only on occasion assisted the special utilityman (mech) in the performance of the job in the packhouse." And because they were not aware of that fact, it too is not germane.

## IV.

The defendant further contends that the Court should delete the fact from its Findings that the defendant's decision to award the promotion to a white man instead of to the plaintiff "was based in part on the plaintiff's race; i. e., the fact that he is a negro."

The finding that the defendant based its decision in part on the race of the plaintiff was not made lightly. It was made only after the demeanor of the witnesses was viewed and after the record of their testimony was carefully weighed. Simply stated, the Court found that the credibility of the plaintiff's witnesses outweighed the credibility of the defendant's and concluded that their testimony was more persuasive. The Court will not banter with the defendant about that now.

## V.

The defendant also contends that the Court should delete the statement from its Findings that the plaintiff was denied a promotion because of his race despite the defendant's vocal policy of being an equal opportunity employer. The defendant is clearly an announced equal opportunity employer. And in every other instance, the defendant may be an equal opportunity employer. But the simple fact of the matter is, in this particular case, it was not. Therefore, the Court's statement will not be deleted.

In addition, the defendant contends that the Court should include the fact within its Findings that the defendant has hired more than a proportionate number of negroes at its plant in Odessa. Although this fact is commendable, the question in this case is not whether the defendant has hired a proportionate number of negroes. The question here is whether, once he has been hired at the Odessa plant, a negro may advance. Accordingly, the fact that the defendant has hired a proportionate number of negroes will not be included.

## VI. & VII.

The defendant next contends that the Court should delete the facts from its Findings that a test was ordered given the plaintiff and Mr. Dennis after the award for the promotion had been made because the defendant feared that a charge of discrimination might be made; and that the bid of the employee who was awarded the promotion was altered to reflect the fact that he had received additional training.

It will suffice to say with regard to both of these contentions that after judging the credibility of the defendant's witnesses, the Court chose to disregard their exculpatory testimony and instead chose to base its Findings of the acts of the witnesses and the logical inferences which usually follow. These findings, therefore, will not be deleted.

## VIII.

The defendant next contends that the Court should make an additional finding that, although Howard Dennis was employed to perform the job of special utilityman (mech) 7 days prior to the date he and the plaintiff were given the test, he did not actually perform the job during that period and therefore was not advantaged. This theory was advanced by the defendant at the trial. But the association of Mr. Dennis with the job and with the other men who worked at the job adequately speaks for itself. And the Court will not make the additional finding.

## IX.

The defendant also contends that the Court should delete the fact from its Findings that the plaintiff is now permanently and totally disabled.

It is clear that the plaintiff is disabled and that he is not available for work. Yet the defendant's contention that there is no evidence that the plaintiff is permanently and totally disabled appears to be correct. Hence, the last sentence of Finding 17 must be, and is hereby amended to read:

On January 6, while working on the job, he was injured and he is disabled and unavailable for work.

## X. & XI.

The defendant further contends that the damages awarded by the Court must be stricken. This contention is frivolous. The record abundantly supports the damages awarded and hence, they will not be stricken.

## XII.

The defendant next contends that the Court should substitute the following language:

The defendant desired an applicant who had a high school education, or equivalent. Who was capable of performing inspections, lubrications and minor repairs of equipment related to

cement plant operations. Who was able to read and interpret simple mechanical drawings, blue prints, sketches, and manufacturer's specifications. Who was able to use measuring devices such as feeler gauges, micrometer and calipers.

for the following language used by the Court:

The defendant desired an applicant who was a high school graduate or who held an equivalent degree, who was able to read simple mechanical drawings and use standard measuring tools, and who was capable of making minor plant and equipment repairs.

Because the language used by the Court accurately summarizes the language the defendant suggests, it will not be deleted.

### XIII.

The defendant also contends that the Court should include the fact within its Findings that the plaintiff had never read blueprints as of the date of the promotion and that Howard Dennis, the white applicant, had. The fact that the plaintiff was not able to read blueprints is implicit in the absence of that qualification on the bid which he submitted. Hence, there is no need now for that addition. Moreover, even though the white applicant may have been able to read blueprints that fact was not reflected on the bid which he submitted. Therefore, company officials were not aware of the fact that he could read blueprints. And it, like other undisclosed qualifications, is not germane.

### XIV.

The defendant next contends that the Court should include the fact within its Findings that the plaintiff failed to note on his bid that he had the ability to use standard measuring tools. This fact is implicit in the Court's finding that the plaintiff reflected on his bid that he:

[h]ad completed the 10th grade and had some mechanical training. That prior to being employed by the defendant, he had been a general labor-

er. That he had been employed by the defendant for four years and had occasionally worked as a special utilityman. And that, in general, he was a willing worker who had performed his job with pride.

Therefore, there is no need now to make this addition.

### XV.

The defendant also contends that the Court should make a finding that Howard Dennis did note on his bid form that he had the ability to use standard measuring tools. The Court has found that these matters were not placed on Mr. Dennis' bid form until after the decision to award him the promotion was made. The Court will not alter this finding by including the suggested addition.

### XVI.

The defendant finally contends that the Court should find that Mr. Dennis was awarded the job in question because of his qualifications. This contention requires little comment. From what the Court observed, it is simply not the truth.

### CONCLUSIONS OF LAW

The defendant contends that the Court should amend its Conclusions of Law. The same issues raised by the defendant, however, are raised in its Motion for New Trial. Therefore, to avoid duplication those issues will be treated by the Court in its determination of the defendant's Motion for a New Trial.

Accordingly, it is so ordered.

### ORDER DENYING MOTION FOR NEW TRIAL

On this the 12th day of April, 1973, came on for consideration and hearing a motion by the defendant for a new trial. The Court, after considering the motion, the comments of counsel, and the files and records of the case, hereby finds and rules as follows:

### I.

The defendant contends that the Court erred in failing to adopt its proposed

Findings of Fact and Conclusions of Law. Initially, the Court did not adopt the Findings of Fact and Conclusions of Law the defendant proposed because they did not reflect the facts of the case. After reconsidering the credibility and testimony of the witnesses in response to this motion, the Court has come again to the same conclusion and the contention of the defendant must be denied.

## II.

The defendant next contends that the Court erred in making the following finding:

> Fearing that a charge of discrimination might be made, a test was ordered given. In addition, the bid of the employee who received the promotion was altered to reflect the fact that he had received additional training.

The defendant further contends that the Court should reopen the evidence and allow the parties to relitigate this matter.

It will suffice to say that every opportunity was afforded to develop the facts which surrounded the bid form and the test. An explanation was offered by the defendant at trial which it apparently wishes to offer again. But on the basis of the demeanor of the witnesses and the tangible evidence of the case, that explanation has been rejected. The Court has found the facts which transpired and that finding will not be altered.

## III.

The defendant contends that the Court erred in finding that the plaintiff did not receive the job in question because he is a negro. That finding was carefully considered by the Court initially and accurately reflects the facts of the case.

## IV.

The defendant also contends that the Court erred in awarding the plaintiff damages for the psychic injuries he sustained. That issue has been more than adequately covered by the Court's Memorandum Opinion of date February 1, 1973. In addition see Note, Tort Remedies for Employment Discrimination Under Title VII, 54 Va.L.Rev. 491 (1968). There is no need to restate the views of the Court again.

## V.

The defendant contends that the Court erred by not ruling on the question of psychic injuries prior to the trial of the case. It contends that it has been denied the right to trial by jury on the issue of psychic injuries by the Court's delay.

First, the defendant never made a demand for jury trial. Therefore, it is difficult to discern how it has been harmed by the Court's decision to delay a determination of the legal issues involved until the facts of the case were clear.

And second, based on the facts of this particular case, it was proper for the Court to decide the amount of psychic injury without a jury award.

There is, of course, no right to trial by jury in Title VII suits. Johnson v. Georgia Highway Express, 417 F.2d 1122 (5th Cir. 1969). They are primarily suits in equity. But "under Title VII, we are not concerned with a federal statute creating 'a federal right for which the *sole* remedy is in equity' " (Emphasis in original) United States v. Georgia Power Co. 474 F.2d 906 (5th Cir., 1973) at fn. 6. In an appropriate case, legal remedies may be awarded. And that fact does not detract from the equitable basis of the suit. In 1 Pomeroy, Equity Jurisprudence, § 237d (5th ed. 1941) the author notes:

> It may be stated, therefore, as a general proposition, that a court of equity declines the jurisdiction to grant mere compensatory damages, when they are not given in addition to or as an incident of some other special equitable relief, unless under special circumstances the exercise of such jurisdiction may be requisite to promote the ends of justice. At 437.

In this case, the Court could only "promote the ends of justice" by granting the requested relief. As the facts developed at the trial it became clear that the plaintiff was disabled and unavailable for work. The Court, therefore, could not fashion a remedy based upon reinstatement. Rather, an alternative remedy based on compensatory damages was required. And in such a case, as Pomeroy makes clear, the Court need not deter from its duty but, consistent with the Seventh Amendment, may grant the appropriate relief.

## VI.

The defendant contends that the Court erred in holding

 3. That liability may include an award of back pay. 42 U.S.C. § 2000e–5(g). The defendant has not shown by clear and convincing evidence that the plaintiff, had he not been a negro, would not have received the initial award. Therefore, the defendant has not shown that this discrimination did not affect the plaintiff's career. The plaintiff is accordingly entitled to recover $1351.92, which he might have received as an increase in pay had he been fairly treated. See, by implication, Cooper v. Allen, 467 F.2d 836, 840 (5th Cir. 1972)

It contends that the Court by so holding, improperly placed the burden of proof.

 ■ A plaintiff in a Title VII suit clearly has the burden of proof. He must establish by a preponderance of the evidence that discrimination has occurred. Here the plaintiff has met that burden, he has clearly established that he was not awarded the job in question because he is a negro.

After discrimination has been established, however, the Court must fashion an appropriate remedy. In fashioning that remedy in a case based on uninentional discrimination, the Fifth Circuit recently held that the defendant has the burden to show why back pay should not be awarded. It held:

We have already determined that the [defendant's] discrimination against [the plaintiff] was not intentional. In such circumstances, [the plaintiff] is entitled both to back pay and individual injunctive relief unless the [defendant] can show by clear and convincing evidence that he would not have been hired even absent the discriminatory testing requirement.

*A fortiori,* in a case where a defendant has engaged in an intentional act of discrimination, it must show that the plaintiff, had it not been for discrimination, would not have received the award of the job.

## VII.

One further matter warrants discussion. The defendant has filed numerous objections to the testimony of Dr. Everett G. Dillman, a witness for the plaintiff. The Court based its decision on only the relevant and admissable testimony of Dr. Dillman. Therefore, the defendant's motion is moot.

Accordingly, the defendant's Motion for a New Trial must be, and is hereby denied.