# JOHNSON v. RAILWAY EXPRESS AGENCY, INC., ET AL.

No. 73–1543. Argued December 11, 1974—Decided May 19, 1975

BLACKMUN, J., delivered the opinion of the Court, in which BURGER, C. J., and STEWART, WHITE, POWELL, and REHNQUIST, JJ., joined, and in Parts I–III of which DOUGLAS, BRENNAN, and MARSHALL, JJ., joined. MARSHALL, J., filed an opinion concurring in part and dissenting in part, in which DOUGLAS and BRENNAN, JJ., joined, *post*, p. 468.

*Deborah M. Greenberg* argued the cause for petitioner. With her on the briefs were *Jack Greenberg, James M. Nabrit III, Morris J. Baller, Eric Schnapper, William E. Caldwell,* and *Louis H. Pollak.*

*Arthur M. Wisehart* argued the cause for respondent Railway Express Agency, Inc. With him on the briefs was *Peter G. Wolfe. James L. Highsaw, Jr.,* argued the cause and filed briefs for respondents Brotherhood of Railway Clerks et al.*

---

*Solicitor General Bork, Assistant Attorney General Pottinger, Keith A. Jones, David L. Rose, Michael A. Middleton,* and *Joseph T. Eddins* filed a brief for the United States as amicus curiae.

MR. JUSTICE BLACKMUN delivered the opinion of the Court.

This case presents the issue whether the timely filing of a charge of employment discrimination with the Equal Employment Opportunity Commission (EEOC), pursuant to § 706 of Title VII of the Civil Rights Act of 1964, 78 Stat. 259, 42 U. S. C. § 2000e–5, tolls the running of the period of limitation applicable to an action, based on the same facts, instituted under 42 U. S. C. § 1981.

I

Petitioner, Willie Johnson, Jr., is a Negro. He started to work for respondent Railway Express Agency, Inc., now, by change of name, REA Express, Inc. (REA), in Memphis, Tenn., in the spring of 1964 as an express handler. On May 31, 1967, while still employed by REA, but now as a driver rather than as a handler, petitioner, with others, timely filed with the EEOC a charge that REA was discriminating against its Negro employees with respect to seniority rules and job assignments. He also charged the respondent unions, Brotherhood of Railway Clerks Tri-State Local and Brotherhood of Railway Clerks Lily of the Valley Local, with maintaining racially segregated memberships (white and Negro respectively). Three weeks later, on June 20, REA terminated petitioner's employment. Petitioner then amended his charge to include an allegation that he had been discharged because of his race.

The EEOC issued its "Final Investigation Report" on December 22, 1967. App. 14a. The report generally supported petitioner's claims of racial discrimination. It was not until more than two years later, however, on March 31, 1970, that the Commission rendered its decision finding reasonable cause to believe petitioner's charges. And 9½ more months went by before the

EEOC, on January 15, 1971, pursuant to 42 U. S. C. § 2000e–5 (e), as it then read, gave petitioner notice of his right to institute a Title VII civil action against the respondents within 30 days.[1]

After receiving this notice, petitioner encountered some difficulty in obtaining counsel. The United States District Court for the Western District of Tennessee, on February 12, 1971, permitted petitioner to file the right-to-sue letter with the court's clerk as a complaint, in satisfaction of the 30-day requirement. The court also granted petitioner leave to proceed *in forma pauperis,* and it appointed counsel to represent him. On March 18, counsel filed a "Supplemental Complaint" against REA and the two unions, alleging racial discrimination on the part of the defendants, in violation of Title VII of the 1964 Act *and* of 42 U. S. C. § 1981. The unions and REA respectively moved for summary judgment or, in the alternative, for dismissal of all claims.

The District Court dismissed the § 1981 claims as barred by Tennessee's one-year statute of limitations. Tenn. Code Ann. § 28–304 (Supp. 1974).[2] Petitioner's remaining claims were dismissed on other grounds.[3]

---

[1] The applicable statute later was amended to allow a period of 90 days, after issuance of the notice, in which to bring the Title VII action. 42 U. S. C. § 2000e–5 (f) (1) (1970 ed., Supp. III), as amended by Pub. L. 92–261, § 4 (a), 86 Stat. 106.

[2] "28–304. Personal tort actions—Malpractice of attorneys—Civil rights actions—Statutory penalties.—Actions for libel, for injuries to the person, false imprisonment, malicious prosecution, criminal conversation, seduction, breach of marriage promise, actions and suits against attorneys for malpractice whether said actions are grounded or based in contract or tort, civil actions for compensatory or punitive damages, or both, brought under the federal civil rights statutes, and actions for statutory penalties shall be commenced within one (1) year after cause of action accrued."

[3] The District Court also based its dismissal of petitioner's § 1981 claim against REA on the alternative ground that he had failed to

In his appeal to the United States Court of Appeals for the Sixth Circuit, petitioner, with respect to his § 1981 claims, argued that the running of the one-year period of limitation was suspended during the pendency of his timely filed administrative complaint with the EEOC under Title VII. The Court of Appeals rejected this argument. 489 F. 2d 525 (1973). See also *Jenkins* v. *General Motors Corp.*, 354 F. Supp. 1040, 1045–1046 (Del. 1973). Because of an apparent conflict between that ruling, and language and holdings in cases from other Circuits,[4] we granted certiorari restricted to the limitation issue. We invited the Solicitor General to file a brief as *amicus curiae* expressing the views of the United States. 417 U. S. 929 (1974).

## II

A. Title VII of the Civil Rights Act of 1964 was enacted "to assure equality of employment opportunities by eliminating those practices and devices that discriminate on the basis of race, color, religion, sex, or national origin." *Alexander* v. *Gardner-Denver Co.*, 415 U. S. 36, 44 (1974). It creates statutory rights against invid-

---

exhaust his administrative remedies under the Railway Labor Act, 44 Stat. 577, 45 U. S. C. § 151 *et seq.* App. 102a. The Court of Appeals did not address the exhaustion argument. Inasmuch as we limited our grant of certiorari to the limitation issue, 417 U. S. 929 (1974), we have no occasion here to express a view as to whether a § 1981 claim of employment discrimination is ever subject to a requirement that administrative remedies be exhausted.

The claims against the unions were dismissed on res judicata grounds. App. 101a. The Court of Appeals agreed with that disposition. 489 F. 2d 525, 530 n. 1 (CA6 1973). This issue, also, was not included in our grant of certiorari.

[4] See, *e. g., Boudreaux* v. *Baton Rouge Marine Contracting Co.*, 437 F. 2d 1011, 1017 n. 16 (CA5 1971); *Macklin* v. *Spector Freight Systems, Inc.*, 156 U. S. App. D. C. 69, 84–86, n. 30, 478 F. 2d 979, 994–996, n. 30 (1973).

ious discrimination in employment and establishes a comprehensive scheme for the vindication of those rights.

Anyone aggrieved by employment discrimination may lodge a charge with the EEOC. That Commission is vested with the "authority to investigate individual charges of discrimination, to promote voluntary compliance with the requirements of Title VII, and to institute civil actions against employers or unions named in a discrimination charge." 415 U. S., at 44. Thus, the Commission itself may institute a civil action. 42 U. S. C. § 2000e–5 (f)(1) (1970 ed., Supp. III). If, however, the EEOC is not successful in obtaining "voluntary compliance" and, for one reason or another, chooses not to sue on the claimant's behalf, the claimant, after the passage of 180 days, may demand a right-to-sue letter and institute the Title VII action himself without waiting for the completion of the conciliation procedures. 42 U. S. C. § 2000e–5 (f)(1) (1970 ed., Supp. III). See H. R. Rep. No. 92–238, p. 12 (1971); *McDonnell Douglas Corp.* v. *Green,* 411 U. S. 792 (1973).

In the claimant's suit, the federal district court is empowered to appoint counsel for him, to authorize the commencement of the action without the payment of fees, costs, or security, and even to allow an attorney's fee. 42 U. S. C. § 2000e–5 (f)(1) (1970 ed., Supp. III) and 42 U. S. C. § 2000e–5 (k). Where intentional engagement in unlawful discrimination is proved, the court may award backpay and order "such affirmative action as may be appropriate." 42 U. S. C. § 2000e–5 (g) (1970 ed., Supp. III). The backpay, however, may not be for more than the two-year period prior to the filing of the charge with the Commission. *Ibid.* Some District Courts have ruled that neither compensatory nor punitive damages may be awarded in the Title VII suit.[5]

---

[5] *Loo* v. *Gerarge,* 374 F. Supp. 1338, 1341–1342 (Haw. 1974);

Despite Title VII's range and its design as a comprehensive solution for the problem of invidious discrimination in employment, the aggrieved individual clearly is not deprived of other remedies he possesses and is not limited to Title VII in his search for relief. "[T]he legislative history of Title VII manifests a congressional intent to allow an individual to pursue independently his rights under both Title VII and other applicable state and federal statutes." *Alexander* v. *Gardner-Denver Co.*, 415 U. S., at 48. In particular, Congress noted "that the remedies available to the individual under Title VII are co-extensive with the indiv[i]dual's right to sue under the provisions of the Civil Rights Act of 1866, 42 U. S. C. § 1981, and that the two procedures augment each other and are not mutually exclusive." H. R. Rep. No. 92–238, p. 19 (1971). See also S. Rep. No. 92–415, p. 24 (1971). Later, in considering the Equal Employment Opportunity Act of 1972, the Senate rejected an amendment that would have deprived a claimant of any right to sue under § 1981. 118 Cong. Rec. 3371–3373 (1972).

B. Title 42 U. S. C. § 1981, being the present codification of § 16 of the century-old Civil Rights Act of 1870, 16 Stat. 144, on the other hand, on its face relates primarily to racial discrimination in the making and enforcement of contracts. Although this Court has not specifically so held, it is well settled among the Federal Courts of Appeals [6]—and we now join them—that § 1981

*Howard* v. *Lockheed-Georgia Co.*, 372 F. Supp. 854, 855–856 (ND Ga. 1974); *Van Hoomissen* v. *Xerox Corp.*, 368 F. Supp. 829, 835–838 (ND Cal. 1973). Cf. *Humphrey* v. *Southwestern Portland Cement Co.*, 369 F. Supp. 832, 842–843 (WD Tex. 1973), rev'd on other grounds, 488 F. 2d 691 (CA5 1974).

[6] *Young* v. *International Tel. & Tel. Co.*, 438 F. 2d 757 (CA3 1971); *Brown* v. *Gaston County Dyeing Machine Co.*, 457 F. 2d 1377 (CA4), cert. denied, 409 U. S. 982 (1972); *Caldwell* v. *Na-*

affords a federal remedy against discrimination in private employment on the basis of race. An individual who establishes a cause of action under § 1981 is entitled to both equitable and legal relief, including compensatory and, under certain circumstances, punitive damages. See, *e. g., Caperci* v. *Huntoon,* 397 F. 2d 799 (CA1), cert. denied, 393 U. S. 940 (1968); *Mansell* v. *Saunders,* 372 F. 2d 573 (CA5 1967). And a backpay award under § 1981 is not restricted to the two years specified for backpay recovery under Title VII.

Section 1981 is not coextensive in its coverage with Title VII. The latter is made inapplicable to certain employers. 42 U. S. C. § 2000e (b) (1970 ed., Supp. III). Also, Title VII offers assistance in investigation, conciliation, counsel, waiver of court costs, and attorneys' fees, items that are unavailable at least under the specific terms of § 1981.

### III

Petitioner, and the United States as *amicus curiae,* concede, as they must, the independence of the avenues of relief respectively available under Title VII and the older § 1981. See *Jones* v. *Alfred H. Mayer Co.,* 392 U. S. 409, 416–417, n. 20 (1968). Further, it has been noted that the filing of a Title VII charge and resort to Title VII's administrative machinery are not prerequisites for the institution of a § 1981 action. *Long* v. *Ford Motor Co.,* 496 F. 2d 500, 503–504 (CA6 1974); *Caldwell* v. *National Brewing Co.,* 443 F. 2d 1044, 1046 (CA5 1971), cert. denied, 405 U. S. 916 (1972); *Young* v. *In-*

---

*tional Brewing Co.,* 443 F. 2d 1044 (CA5 1971), cert. denied, 405 U. S. 916 (1972); *Long* v. *Ford Motor Co.,* 496 F. 2d 500 (CA6 1974); *Waters* v. *Wisconsin Steel Works,* 427 F. 2d 476 (CA7), cert. denied *sub nom. International Harvester Co.* v. *Waters,* 400 U. S. 911 (1970); *Brady* v. *Bristol-Meyers, Inc.,* 459 F. 2d 621 (CA8 1972); *Macklin* v. *Spector Freight Systems, Inc., supra.*

*ternational Tel. & Tel. Co.,* 438 F. 2d 757, 761–763 (CA3 1971). Cf. *Waters* v. *Wisconsin Steel Works,* 427 F. 2d 476, 487 (CA7), cert. denied *sub nom. International Harvester Co.* v. *Waters,* 400 U. S. 911 (1970).

We are satisfied, also, that Congress did not expect that a § 1981 court action usually would be resorted to only upon completion of Title VII procedures and the Commission's efforts to obtain voluntary compliance. Conciliation and persuasion through the administrative process, to be sure, often constitute a desirable approach to settlement of disputes based on sensitive and emotional charges of invidious employment discrimination. We recognize, too, that the filing of a lawsuit might tend to deter efforts at conciliation, that lack of success in the legal action could weaken the Commission's efforts to induce voluntary compliance, and that a suit is privately oriented and narrow, rather than broad, in application, as successful conciliation tends to be. But these are the natural effects of the choice Congress has made available to the claimant by its conferring upon him independent administrative and judicial remedies. The choice is a valuable one. Under some circumstances, the administrative route may be highly preferred over the litigatory; under others, the reverse may be true. We are disinclined, in the face of congressional emphasis upon the existence and independence of the two remedies, to infer any positive preference for one over the other, without a more definite expression in the legislation Congress has enacted, as, for example, a proscription of a § 1981 action while an EEOC claim is pending.

We generally conclude, therefore, that the remedies available under Title VII and under § 1981, although related, and although directed to most of the same ends, are separate, distinct, and independent. With this base established, we turn to the limitation issue.

## IV

A. Since there is no specifically stated or otherwise relevant federal statute of limitations for a cause of action under § 1981, the controlling period would ordinarily be the most appropriate one provided by state law. See *O'Sullivan* v. *Felix,* 233 U. S. 318 (1914) (Civil Rights Act of 1871); *Auto Workers* v. *Hoosier Corp.,* 383 U. S. 696, 701–704 (1966) (Labor Management Relations Act); *Cope* v. *Anderson,* 331 U. S. 461 (1947) (National Bank Act); *Chattanooga Foundry* v. *Atlanta,* 203 U. S. 390 (1906) (Sherman Act); *Campbell* v. *Haverhill,* 155 U. S. 610 (1895) (Patent Act). For purposes of this case, the one-year limitation period in Tenn. Code Ann. § 28–304 (Supp. 1974) clearly and specifically has application.[7] See *Warren* v. *Norman Realty Co.,* 513 F. 2d 730 (CA8 1975). The cause of action asserted by petitioner accrued, if at all, not later than June 20, 1967, the date of his discharge. Therefore, in the absence of some circumstance that suspended the running of the limitation period, petitioner's cause of

---

[7] In the petition for certiorari it was argued that § 28–304 was inapplicable to petitioner's claim because that statute is limited to claims for damages, whereas petitioner sought injunctive relief as well as backpay. Our limited grant of certiorari foreclosed our considering whether some other Tennessee statute, such as Tenn. Code Ann. § 28–309 (1955) (six years for an action on a contract) or § 28–310 (1955) (10 years on an action not otherwise provided for), might be the appropriate one. We also have no occasion to consider whether Tennessee's express application of the one-year limitation period to federal civil rights actions is an impermissible discrimination against the federal cause of action, see *Republic Pictures Corp.* v. *Kappler,* 151 F. 2d 543, 546–547 (CA8 1945), aff'd, 327 U. S. 757 (1946), or whether the enactment of the limitation period after the cause of action accrued, Tenn. Pub. Acts 1969, c. 28, did not touch the pre-existing federal claim.

action under § 1981 was time barred after June 20, 1968, over 2½ years before petitioner filed his complaint.

B. Respondents argue that the only circumstances that would suspend or toll the running of the limitation period under § 28–304 are those expressly provided under state law. See Tenn. Code Ann. §§ 28–106 to 28–115 (1955 and Supp. 1974) and 28–301 (1955). Petitioner concedes, at least implicitly, that no tolling circumstance described in the State's statutes was present to toll the period for his § 1981 claim. He argues, however, that state law should not be given so broad a reach. He claims that, although the duration of the limitation period is bottomed on state law, it is federal law that governs other limitations aspects, such as tolling, of a § 1981 cause of action. Without launching into an exegesis on the nice distinctions that have been drawn in applying state and federal law in this area,[8] we think it suffices to say that petitioner has overstated his case. Indeed, we may assume that he would argue vigorously in favor of applying state law if any of the Tennessee tolling provisions could be said to assist his cause.[9]

Any period of limitation, including the one-year period specified by § 28–304, is understood fully only in the context of the various circumstances that suspend it from running against a particular cause of action. Although any statute of limitations is necessarily arbitrary, the length of the period allowed for instituting suit inevitably reflects a value judgment concerning the point

---

[8] See generally Hill, State Procedural Law in Federal Nondiversity Litigation, 69 Harv. L. Rev. 66 (1955).

[9] At oral argument petitioner advanced just such a proposition with respect to the applicability of Tennessee's saving statute, Tenn. Code Ann. § 28–106 (1955). Tr. of Oral Arg. 14. See also Pet. for Cert. 21 n. 27.

at which the interests in favor of protecting valid claims are outweighed by the interests in prohibiting the prosecution of stale ones. In virtually all statutes of limitations the chronological length of the limitation period is interrelated with provisions regarding tolling, revival, and questions of application. In borrowing a state period of limitation for application to a federal cause of action, a federal court is relying on the State's wisdom in setting a limit, and exceptions thereto, on the prosecution of a closely analogous claim.

There is nothing anomalous or novel about this. State law has been followed in a variety of cases that raised questions concerning the overtones and details of application of the state limitation period to the federal cause of action. *Auto Workers* v. *Hoosier Corp.,* 383 U. S., at 706 (characterization of the cause of action); *Cope* v. *Anderson,* 331 U. S., at 465–467 (place where cause of action arose); *Barney* v. *Oelrichs,* 138 U. S. 529 (1891) (absence from State as a tolling circumstance). Nor is there anything peculiar to a federal civil rights action that would justify special reluctance in applying state law. Indeed, the express terms of 42 U. S. C. § 1988 [10] suggest that the contrary is true.

---

[10] Title 42 U. S. C. § 1988 provides:

"The jurisdiction in civil and criminal matters conferred on the district courts by the provisions of this chapter and Title 18, for the protection of all persons in the United States in their civil rights, and for their vindication, shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect; but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposi-

C. Although state law is our primary guide in this area, it is not, to be sure, our exclusive guide. As the Court noted in *Auto Workers* v. *Hoosier Corp.*, 383 U. S., at 706–707, considerations of state law may be displaced where their application would be inconsistent with the federal policy underlying the cause of action under consideration.

Petitioner argues that a failure to toll the limitation period in this case will conflict seriously with the broad remedial and humane purposes of Title VII. Specifically, he urges that Title VII embodies a strong federal policy in support of conciliation and voluntary compliance as a means of achieving the statutory mandate of equal employment opportunity. He suggests that failure to toll the statute on a § 1981 claim during the pendency of an administrative complaint in the EEOC would force a plaintiff into premature and expensive litigation that would destroy all chances for administrative conciliation and voluntary compliance.

We have noted this possibility above and, indeed, it is conceivable, and perhaps almost to be expected, that failure to toll will have the effect of pressing a civil rights complainant who values his § 1981 claim into court before the EEOC has completed its administrative proceeding.[11] One answer to this, although perhaps not a highly satisfactory one, is that the plaintiff in his § 1981 suit may ask the court to stay proceedings until the administrative efforts at conciliation and voluntary compliance have been completed. But the fundamental answer to petitioner's argument lies in the fact—pre-

tion of the cause, and, if it is of a criminal nature, in the infliction of punishment on the party found guilty."

[11] We are not unmindful of the significant delays that have attended administrative proceedings in the EEOC. See, *e. g., Chromcraft Corp.* v. *EEOC*, 465 F. 2d 745 (CA5 1972); *EEOC* v. *E. I. duPont deNemours & Co.*, 373 F. Supp. 1321, 1329 (Del. 1974).

sumably a happy one for the civil rights claimant—that Congress clearly has retained § 1981 as a remedy against private employment discrimination separate from and independent of the more elaborate and time-consuming procedures of Title VII. Petitioner freely concedes that he could have filed his § 1981 action at any time after his cause of action accrued; in fact, we understand him to claim an unfettered right so to do. Thus, in a very real sense, petitioner has slept on his § 1981 rights. The fact that his slumber may have been induced by faith in the adequacy of his Title VII remedy is of little relevance inasmuch as the two remedies are truly independent. Moreover, since petitioner's Title VII court action now also appears to be time barred because of the peculiar procedural history of this case, petitioner, in effect, would have us extend the § 1981 cause of action well beyond the life of even his Title VII cause of action. We find no policy reason that excuses petitioner's failure to take the minimal steps necessary to preserve each claim independently.

## V

Petitioner cites *American Pipe & Construction Co.* v. *Utah,* 414 U. S. 538 (1974), and *Burnett* v. *New York Central R. Co.,* 380 U. S. 424 (1965), in support of his position. Neither case is helpful. The respective periods of limitation in those cases were derived directly from federal statutes rather than by reference to state law. Moreover, in each case there was a substantial body of relevant federal procedural law to guide the decision to toll the limitation period, and significant underlying federal policy that would have conflicted with a decision not to suspend the running of the statute.[12] In the

---

[12] In *Burnett,* the Court considered the effect of a prior filing of an action under the Federal Employers' Liability Act in state court on the applicable three-year FELA period of limitation. The action

present case there is no relevant body of federal procedural law to guide our decision, and there is no conflicting federal policy to protect.[13]  Finally, and perhaps most importantly, the tolling effect given to the timely prior filings in *American Pipe* and in *Burnett* depended heavily on the fact that those filings involved exactly the same cause of action subsequently asserted.  This factor was more than a mere abstract or theoretical consideration because the prior filing in each case necessarily operated to avoid the evil against which the statute of limitations was designed to protect.[14]

The judgment of the Court of Appeals is affirmed.

*It is so ordered.*

---

had been dismissed because under state law the venue was improper. In view of the express federal policy liberally allowing transfer of improper-venue cases, see 28 U. S. C. § 1406 (a), and the desirability of uniformity in the enforcement of FELA claims, the Court concluded that the prior filing tolled the statute.  In *American Pipe* we considered the effect that a timely filed civil antitrust purported class action should have on the applicable four-year federal period of limitation.  The District Court found the suit an inappropriate one for class action status.  In the light of the history of Fed. Rule Civ. Proc. 23 and the purposes of litigatory efficiency served by class actions, we concluded that the prior filing had a tolling effect.

[13] We note expressly how little is at stake here.  We are not really concerned with the broad question whether these respondents can be compelled to conform their practices to the nationally mandated policy of equal employment opportunity.  If the respondents, or any of them, presently are actually engaged in such conduct, there necessarily will be claimants who are in a position now either to file a charge under Title VII or to sue under § 1981.  The question in this case is only whether this particular petitioner has waited so long that he has forfeited his right to assert his § 1981 claim in federal court.

[14] Petitioner argues that the timely filing of a charge with the EEOC has the effect of placing the charged employer on notice that a claim of discrimination is being asserted.  Thus, petitioner argues,

468

Mr. Justice Marshall, with whom Mr. Justice Douglas and Mr. Justice Brennan join, concurring in part and dissenting in part.

In recognizing that Congress intended to supply aggrieved employees with independent but related avenues of relief under Title VII of the Civil Rights Act of 1964 and § 16 of the Civil Rights Act of 1870, 42 U. S. C. § 1981, the Court emphasizes the importance of a full arsenal of weapons to combat unlawful employment discrimination in the private as well as the public sector. The majority stands on firm ground in recognizing that both remedies are available to victims of discriminatory practices. Accordingly, I concur in Parts I–III of the Court's opinion.

But, the Court stumbles in its analysis of the relation between the two statutes on the tolling question. The majority concludes that the filing of a Title VII charge with the Equal Employment Opportunity Commission (EEOC) does not toll the applicable statute of limitations. It relies exclusively on state law for the period and effect of the limitation and discounts the importance of the federal policies of conciliation and avoidance of

the employer has the opportunity to protect itself against the loss of evidence, the disappearance and fading memories of witnesses, and the unfair surprise that could result from a sudden revival of a claim that long has been allowed to slumber. See *Telegraphers* v. *Railway Express Agency*, 321 U. S. 342, 348–349 (1944).

Even if we were to ignore the substantial span of time that could result from tacking the § 1981 limitation period to the frequently protracted period of EEOC consideration, we are not at all certain that a Title VII charge affords the charged party the protection that petitioner suggests. See, e. g., *Tipler* v. *E. I. duPont deNemours & Co.*, 443 F. 2d 125, 131 (CA6 1971). Only where there is complete identity of the causes of action will the protections suggested by petitioner necessarily exist and will the courts have an opportunity to assess the influence of the policy of repose inherent in a limitation period. See generally Developments in the Law—Statutes of Limitation, 63 Harv. L. Rev. 1177, 1185–1186 (1950).

unnecessary litigation in this area. The majority recognizes these policies but concludes that tolling the statute of limitations for a § 1981 suit during the pendency of Title VII proceedings is not an appropriate means of furthering them. I disagree. The congressional purpose of discouraging premature judicial intervention and the absence of any real risk of reviving stale claims suggest the propriety of tolling here. On balance, I view the failure to apply the tolling principle as undermining the foundation of Title VII and frustrating the congressional policy of providing alternative remedies. I must, therefore, dissent from Parts IV and V of the opinion.

The Court sets out the circumstances that suspend a statute of limitations without close examination of the statute's equitable underpinnings. According to the majority, the federal court is deprived of authority to toll the state statute because it borrows both "the State's wisdom in setting a limit, [as well as] exceptions thereto," *ante*, at 464, and offers no special reason for reluctance to apply the "overtones" of the period to a federal civil rights action. As a general practice, where Congress has created a federal right without prescribing a period for enforcement, the federal courts uniformly borrow the most analogous state statute of limitations. The applicable period of limitations is derived from that which the State would apply if the action had been brought in a state court. See, *e. g., Auto Workers* v. *Hoosier Corp.,* 383 U. S. 696 (1966); *Holmberg* v. *Armbrecht,* 327 U. S. 392 (1946); *O'Sullivan* v. *Felix,* 233 U. S. 318 (1914). See also *American Pipe & Construction Co.* v. *Utah,* 414 U. S. 538, 556 n. 27 (1974). For the purposes of this case the § 1981 action is governed by the District Court's application of the one-year Tennessee provision for "actions . . . brought under the federal civil rights statutes." Tenn. Code Ann. § 28–304 (Supp. 1974). See *ante,* at 462 n. 7.

Congress' failure to include a built-in limitations period in § 1981 does not automatically warrant "an imprimatur on state law" and sanction the borrowing of both the effect as well as the duration from state law. *Auto Workers* v. *Hoosier Corp., supra,* at 709 (WHITE, J., dissenting); *Holmberg* v. *Armbrecht, supra,* at 394–395; *Board of Comm'rs* v. *United States,* 308 U. S. 343 (1939). It is well settled that when federal courts sit to enforce federal rights, they have an obligation to apply federal equity principles:

> "When Congress leaves to the federal courts the formulation of remedial details, it can hardly expect them to break with historic principles of equity in the enforcement of federally-created equitable rights." *Holmberg* v. *Armbrecht, supra,* at 395.

See also *Moviecolor, Ltd.* v. *Eastman Kodak Co.,* 288 F. 2d 80 (CA2), cert. denied, 368 U. S. 821 (1961).

The effect to be given the borrowed statute is thus a matter of judicial implication. Simply stated, we must determine whether the national policy considerations favoring the continued availability of the § 1981 cause of action outweigh the interests protected by the State's statute of limitations. See *Auto Workers* v. *Hoosier Corp., supra,* at 708; *Holmberg* v. *Armbrecht, supra,* at 395.

I

Title VII and now § 1981 both express the federal policy against discriminatory employment practices. *Emporium Capwell Co.* v. *WACO,* 420 U. S. 50, 66 (1975); *Alexander* v. *Gardner-Denver Co.,* 415 U. S. 36, 44 (1974); *McDonnell Douglas Corp.* v. *Green,* 411 U. S. 792, 800 (1973); *Griggs* v. *Duke Power Co.,* 401 U. S. 424, 429–430 (1971). As we have recently observed, "legislative enactments in this area have long evinced a

general intent to accord parallel or overlapping remedies against discrimination." *Alexander* v. *Gardner-Denver Co., supra,* at 47. It is this general legislative intent that must guide us in determining whether congressional purpose with respect to a particular statute is effectuated by tolling the statute of limitations.

A full exposition of the statutory origins of § 1981 with respect to prohibition against private acts of discrimination is set out in *Jones* v. *Alfred H. Mayer Co.,* 392 U. S. 409 (1968). In construing § 1982, a sister provision to § 1981, we concluded that Congress intended to prevent private discriminatory deprivations of all the rights enumerated in § 1 of the 1866 Act, including the right to contract. 392 U. S., at 426. The Court's recognition of a proscription in § 1981 against private acts of employment discrimination, *ante,* at 459–460, reaffirms that the early Civil Rights Acts reflect congressional intent to "speak . . . of *all* deprivations . . . whatever their source." *Griffin* v. *Breckenridge,* 403 U. S. 88, 97 (1971); see also *Sullivan* v. *Little Hunting Park, Inc.,* 396 U. S. 229 (1969).

The legislative history of Title VII and its 1972 amendments demonstrates that Congress intended to provide a coordinated but comprehensive set of remedies against employment discrimination. The short statute of limitations and the procedural prerequisites to Title VII actions emphasized the need to preserve the remedy of a suit under the 1870 legislation, which did not suffer from the same procedural restrictions as the latter enactment. See H. R. Rep. No. 92–238, p. 19 (1971); S. Rep. No. 92–415, p. 24 (1971). See also 118 Cong. Rec. 3370 (1972). Congressional sentiment was that "[b]y strengthening the administrative remedy [it] should not also eliminate preexisting rights which the Constitution and [the Congress had] accorded to aggrieved individ-

uals." *Id.,* at 3371. While encouragement of private settlement to avoid unnecessary litigation under Title VII and the preservation of an independent § 1981 action may appear somewhat at odds, the two themes are reconciled in the context of their joint remedial purpose: devising a flexible network of remedies to guarantee equal employment opportunities. See, *e. g., Guerra* v. *Manchester Terminal Corp.,* 498 F. 2d 641, 650 (CA5 1974); *Boudreaux* v. *Baton Rouge Marine Contracting Co.,* 437 F. 2d 1011, 1017 (CA5 1971); *Macklin* v. *Spector Freight Systems, Inc.,* 156 U. S. App. D. C. 69, 84–86, n. 30, 478 F. 2d 979, 994–996, n. 30 (1973). See also *Culpepper* v. *Reynolds Metals Co.,* 421 F. 2d 888 (CA5 1970).

In *Alexander* v. *Gardner-Denver, supra,* we examined the relationship between compulsory arbitration and litigation under Title VII, a relationship analogous to that between the EEOC factfinding and conciliation process and litigation under § 1981, and accommodated both avenues of redress. The reasoning leading to that result is equally compelling here. Forced compliance with a short statute of limitations during the pendency of a charge before the EEOC would discourage and/or frustrate recourse to the congressionally favored policy of conciliation, *Alexander* v. *Gardner-Denver Co.,* 415 U. S., at 44, and "[t]he possibility of voluntary compliance or settlement of Title VII claims would thus be reduced, and the result could well be more litigation, not less." *Id.,* at 59. Cf. *American Pipe & Constr. Co.* v. *Utah,* 414 U. S., at 555–556.

Congressional effort, with the 1972 amendments, to strengthen the administrative remedy by increasing EEOC's ability to conciliate complaints is frustrated by the majority's requirement that an employee file the § 1981 action prior to the conclusion of the Title VII conciliation efforts in order to avoid the bar of the

statute of limitations.[1] Legislative pains to avoid unnecessary and costly litigation by making the informal investigatory and conciliatory offices of EEOC readily available to victims of unlawful discrimination cannot be squared with the formal mechanistic requirement of early filing for the technical purpose of tolling a limitations statute. In sum, the federal policies weigh strongly in favor of tolling.

## II

Examination of the purposes served by the statute of limitations indicates that they would not be frustrated by adoption of the tolling rule. Statutes of limitations are designed to insure fairness to defendants by preventing the revival of stale claims in which the defense is hampered by lost evidence, faded memories, and disappearing witnesses, and to avoid unfair surprise. None of these factors exists here.

Respondents were informed of the petitioner's grievances through the complaint filed with the Commission and conciliation negotiations. The charge filed with the EEOC and the § 1981 claim arise out of the same factual circumstances. The petitioner in this case diligently pursued the informal procedures before the Commission and adhered to the congressional preference for conciliation prior to litigation. Now, when Johnson asserts his right to proceed with litigation under § 1981 after his good-faith, albeit unnecessary, compliance with Title VII procedures, the majority interposes the bar of the Tennessee statute of limitations which clearly was not designed to include such cases.[2]

---

[1] Loss of the § 1981 cause of action would deprive the aggrieved employee of the opportunity to recover punitive damages and more ample backpay.

[2] Under the Court's no-tolling principle petitioner's discharge on June 20, 1967, activated the statute which subsequently ran on

In my judgment, following the antitolling position of the Court to its logical conclusion produces an inequitable result. Aggrieved employees will be forced into simultaneously prosecuting premature § 1981 actions in the federal courts. In essence, the litigant who first explores conciliation prior to resort to litigation must file a duplicative claim in the district court on which the court will either take no action until the Title VII proceedings are concluded or proceed in frustration of the EEOC attempts to conciliate. No federal policy considerations warrant this waste of judicial time and derogation of the conciliation process.

Adoption of the tolling principle, however, protects the federal interest in both preserving multiple remedies for employment discrimination and in the proper function of the limitations statute. As a normal consequence tolling works to suspend the operation of a statute of limitations during the pendency of an event or condition. See *American Pipe & Construction Co.* v. *Utah,* 414 U. S., at 560 561; *Burnett* v. *New York Central R. Co.,* 380 U. S. 424, 427 (1965). In *American*

June 20, 1968—two years prior to his receipt of the right-to-sue letter! The majority suggests that even if the statute were tolled during the consideration of the EEOC charge and the initial court proceedings, petitioner's Title VII action may be time barred because of the unusual procedural history of the case, requiring the Court to extend his § 1981 claim beyond that arising out of Title VII. But our limited grant of certiorari forecloses consideration of the timeliness of the Title VII claim.

In any event this case reflects no departure from the normal rule of tolling. Consistent with the common understanding that tolling entails a suspension rather than an extension of a period of limitations, petitioner is allowed whatever time remains under the applicable statute, as well as the benefit of any state saving statute. Under Tenn. Code Ann. § 28–106 (1955) an action dismissed without prejudice may be reinstituted within a year of dismissal. The filing here falls well within that time frame.

*Pipe* we held that the initiation of a timely class action tolled the running of the limitation period as to individual members of the class, enabling them to institute separate actions after the District Court found class action an inappropriate mechanism for the litigation. In similar manner the *Burnett* court viewed the initiation of a timely Federal Employers' Liability Act suit in state court as tolling the statute of limitations for the later filing of a federal action following dismissal of the state proceeding for improper venue. The Court's analysis in both cases rested on the conclusion that each plaintiff had by his prior action given the defendant timely notice in a manner that "fulfilled the policies of repose and certainty inherent in the limitation provisions and tolled the running of the period." *American Pipe & Construction Co.* v. *Utah, supra,* at 558.

Although the length of the limitation in these cases was fixed by federal statute, the tolling rationale is equally adaptable to protect subsequent litigation when the duration period is established by state statute. The federal policy in favor of continuing availability of multiple remedies for persons subject to employment discrimination is inconsistent with the majority's decision not to suspend the operation of the statute. As long as the claim arising under § 1981 is essentially limited to the Title VII claim, staleness and unfair surprise disappear as justification for applying the statute.[3] Additionally, the difference in statutory origin for the right asserted under the EEOC charge and the subsequent § 1981 suit is of no consequence since the claims are

---

[3] Where there are differences between the § 1981 claim and the Title VII complaint, the district courts could easily limit the tolling to those portions of the § 1981 claim that overlapped the Title VII allegations. Cf. *EEOC* v. *Louisville & N. R. Co.,* 505 F. 2d 610, 617 (CA5 1974); *Sanchez* v. *Standard Brands,* 431 F. 2d 455, 466 (CA5 1970).

essentially equivalent in substance. Cf. *Alexander* v. *Gardner-Denver, supra.* Since the EEOC charge gives notice that petitioner also has a grievance under § 1981, that filing, like the initial litigation in *Burnett* and *American Pipe,* satisfied the equitable policies underlying the limitation provision. *American Pipe & Construction Co.* v. *Utah, supra,* at 558.

Neither the legislative history of these Acts nor the avowed purposes of statutes of limitations foreclose good-faith resort to the administrative procedures of the EEOC. Adoption of the tolling theory avoids the Draconian choice of losing the benefits of conciliation or giving up the right to sue, yet preserves the independent nature of the § 1981 action. Accordingly, I would reverse the court below on this point.