**Andra NICHOLS**

v.

**ACME MARKETS, INC.**

**Civ. A. No. 88–7487.**

United States District Court,
E.D. Pennsylvania.

May 10, 1989.

Gregory G. Holston, Norristown, Pa., for plaintiff.

Robert J. Bray, Jr., Robert J. Bray & Associates, Philadelphia, Pa., for defendant.

## MEMORANDUM

KATZ, District Judge.

Andra Nichols is a former cashier at one of defendant's supermarkets. She is black. On the afternoon of February 5, 1987, Nichols was working the express aisle when an elderly white woman came to her register. Nichols rang up the customer's goods but refused to accept payment because the customer had offered to pay with a single $5.00 food stamp and store policy dictated that food stamps above $1.00 denominations could not be accepted unless presented in "book form." The customer used a racial slur and slapped Nichols across the face. Nichols then stepped out from beyond her counter and punched the customer in the mouth. She was immediately suspended. Shortly thereafter she was fired.

Nichols has instituted this employment discrimination action here pursuant to 42 U.S.C. § 1981, also asserting pendent state claims of "negligence, defamation, and intentional and negligent infliction of emotional distress." Complaint ¶ 21. Defendant has moved for summary judgment and asks for attorney's fees. On the record before me, consisting largely of conflicting deposition and affidavit testimony, I find that plaintiff has established a prima facie section 1981 case and has demonstrated the existence of a genuine issue of material fact on the question of whether Acme's decision to fire Nichols was impermissibly based on the fact that she is black. For that reason, summary judgment will be denied on the employment discrimination claim and the matter will proceed to trial. Summary judgment will be granted, however, in favor of defendant on the pendent state claims. Defendant's request for attorney's fees will be denied on the ground that such a request is premature, with leave to renew the request at the close of trial.

## I. THE FACTUAL RECORD

Viewed in the light most favorable to the non-moving party, and resolving any doubts against the entry of judgment, *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir.1976), *cert. denied*, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977), the facts on the summary judgment record are as follows:

### A. *The incident involving plaintiff*

Nichols had worked for Acme since 1979 and at the time of the incident was an employee of good-standing with Acme. She had never been subject to disciplinary action or proceedings. She was generally well-liked by her co-workers and customers.

Agatha Bosch, the customer who became involved in the altercation with Nichols, was between the ages of sixty-five and seventy, mentally unbalanced, and subject to epileptic fits for which she had recently sought and received medical treatment. She was a regular customer in the store. Nichols herself had waited on her once or twice before, although she had never had any problems with her. According to another customer who knew Bosch fairly well, Bosch was a "confrontational" person who on the day of the incident came into the store with "a chip on her shoulder."

When Nichols refused to accept for payment her loose $5.00 food stamp, Bosch made a racially prejudiced statement ("What do you think I am, like you people?"), snatched back the $5.00 stamp and handed Nichols three loose $1.00 food stamps, which Nichols accepted. Nichols turned towards the register, expecting fur-

ther payment, and Bosch reached into her handbag. Then, while Nichols was still turned away, Bosch slapped Nichols hard across the face.

Nichols shouted: "Don't you ever put your hands in my face again." Another cashier yelled up to the nearby office that the manager should come down because "the lady just slapped Andra in the face." Nichols shouted again at Bosch to keep her hands out of her face. The manager of the store, Mike Bowes, and the District Produce Supervisor, Joseph Landy, who was present in the office with Bowes at the time, hurried down to the express checkout lane to see what was happening.

By that time Nichols and Bosch were arguing loudly. Nichols was still yelling that Bosch had no right to hit her in the face because of food stamps. Bosch retorted angrily: "You all act alike." Bowes attempted to calm Nichols down and tried to get her to leave her register. Nichols said to Bowes, the store manager: "She shouldn't have slapped me." Bowes and Landy, talking to both Nichols and Bosch, attempted to defuse the situation, but everybody was talking at once and the tension increased. This is the point at which Nichols walked around to where Bosch was standing. The old woman had her hands at her sides. Nichols cocked her fist and punched Bosch in the mouth.

Landy grabbed Nichols by the shoulder and told her she was suspended. Nichols tried to explain that the woman had just slapped her for no good reason. Landy responded by repeating that she was suspended indefinitely and ordering her to leave the store immediately. He also recommended that she call her union representative.

Bosch was bleeding from the mouth but declined medical treatment offered by Landy. She also declined his offer of a ride home. Some time later she accepted a settlement offered her by Acme, and Acme obtained a release from her.

Nichols spoke to her union representative, Hank Alston, the following day, February 6. A series of grievance meetings were subsequently held between Nichols,

Alston, Bowes, Landy, and William Young, the Acme official responsible for all personnel functions within the region and the person authorized to make the decision concerning Nichols' future with the company. At the first meeting, Young told Nichols that company policy dictated that she should be fired. His ultimate decision to fire her, made in March, was based principally on the statements of Landy and Bowes, who testified that Nichols had not been hit by Bosch. Two witnesses, cashiers working the registers immediately adjacent to the express lane at the time of the incident and who later testified at deposition that Nichols was hit, were not present at either meeting. They were invited but were unable to attend. Young apparently did not consider it necessary to order continuances to accommodate them.

The union pursued the matter through arbitration pursuant to its collective bargaining agreement with Acme. Nichols was represented by counsel at the arbitration hearing and gave testimony. The arbitrator denied the grievance, concluding that "[h]itting a customer under the circumstances present in this case is an act that, on its face, is just cause for discharging an employee in a retail establishment."

At no time during any of the pre-termination grievance meetings or during the arbitration hearing did Nichols raise the issue of racial discrimination. Following the entry of the arbitration award against her on August 5, 1988, Nichols did not seek aid through the Philadelphia or Pennsylvania Human Relations Commissions. Nor did she file a complaint with the Equal Employment Opportunity Commission. Instead, on September 28, she commenced this section 1981 action in federal court.

B. *The incident involving another Acme employee*

In April, 1987, two months after the incident involving Nichols and within a month of her being fired, an incident occurred at another Acme supermarket in Philadelphia involving a white employee named John Iacaruso.

The hood ornament of Iacaruso's Cadillac had recently been stolen. Iacaruso had filed a report with the Philadelphia Police Department.

On April 11, a twelve year old black child named Derrick Jones entered the supermarket where Iacaruso was employed wearing a chain around his neck with a Cadillac hood ornament dangling from it. Iacaruso was off-duty that evening. Jones was approached by an on-duty employee who asked to see the hood ornament, which Jones told him he had purchased that day.

The employee forced Jones against his will to the security office and detained him there for half-an-hour. During this time the employee phoned Iacaruso at a bar. The police were also called. Iacaruso arrived first. Jones was held in the office until Iacaruso arrived.

Iacaruso inflicted a severe beating on Jones in the presence of a store security guard. He punched Jones about the head, face and body and, slamming him against a locker, opened a gash on Jones' head, which later required seven stitches to close.

The police arrived and escorted Jones to the hospital. Iacaruso was not detained. Jones' mother was called and she too went to the hospital. She wanted to press charges. Later that night, in the early morning hours, the police drove to Iacaruso's house and arrested him for the assault.

Acme took no immediate action against Iacaruso. Approximately two weeks later, Jones' mother became aware that he was still working at the same supermarket. She called the Acme offices and talked to Landy, who, it will be recalled, was the on-the-scene Acme supervisor who had suspended Nichols. Landy told her that he was not aware of the incident involving Iacaruso.

Iacaruso was suspended pending an investigation. At the first grievance meeting, at which Iacaruso, Young, Landy and Alston were present, Iacaruso refused to tell his side of the story on the advice of counsel because criminal charges were pending against him. At this first hearing there was testimony from the store supervisor that the security guard in the store at the time initially had stated that he saw Iacaruso beat up the twelve year old, but later denied seeing anything, saying that he had left the youth and Iacaruso in the room by themselves.

At the second grievance meeting, several months later, Iacaruso testified on his own behalf. He testified that he never touched Jones and that the boy cut his head falling. He also testified that the criminal charges against him had been dropped. Alston, the union representative, argued that since the charges had not been proven, Iacaruso should be permitted to return to work. Young, the decisionmaker, agreed to lift Iacaruso's suspension, but with no allowance for back pay. Iacaruso was also given a warning that any similar incidents in the future would result in an automatic discharge.

## II. EXHAUSTION

As a threshold matter, defendant asserts that this court lacks jurisdiction over the case because plaintiff has failed to exhaust her administrative remedies. Acme also makes what amounts to a waiver argument that plaintiff should be barred from claiming racial discrimination "out of the blue," Defendant's Brief at 33, having failed to assert the claim earlier within the labor grievance context.

These arguments are without merit. It has long been settled that "the filing of a Title VII charge and resort to Title VII's administrative machinery are not prerequisites for the institution of a § 1981 action." *Johnson v. Railway Express Agency*, 421 U.S. 454, 460, 95 S.Ct. 1716, 1720, 44 L.Ed. 2d 295 (1975). Plaintiff was under no obligation to go to the Philadelphia or Pennsylvania Human Relations Commissions or to the EEOC before asking the federal courts for relief under section 1981. The statutory scheme contemplates two procedural avenues running parallel to related remedial points. While recourse to the administrative process is sometimes preferable, it is not required. Thus what Acme calls an impermissible failure to pursue administrative remedies is more accurately character-

ized by plaintiff as a legitimate choice *not* to pursue administrative remedies. As the Supreme Court has observed, "[t]he choice is a valuable one." *Id.* at 461, 95 S.Ct. at 1720.

■■■■ Acme's argument that dispensing with an exhaustion requirement would hobble unions in attempting to regulate their internal affairs and inappropriately throw the courts into the collective bargaining relationship also fails. In concrete terms, the defendant contends that once Nichols partook of the union grievance process she bound herself to exhaust all available administrative procedures before resorting to a formal lawsuit. Under Title VII, an employee complaining of employment discrimination does not waive a cause of action by voluntarily submitting the claim to arbitration. *Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974). *A fortiori,* under section 1981, the same employee doing the same thing does not by virtue of that fact alone incur an exhaustion penalty. When the employee submits her grievance to arbitration, she seeks to vindicate a contractual right; when she files a lawsuit, she asserts independent statutory rights. *Id.* at 49–50, 94 S.Ct. at 1020. The distinction between these separately demarcated rights is not vitiated, as defendant believes, by the federal policy favoring arbitration of labor disputes. *Id.* at 46–47, 94 S.Ct. at 1018–19.

Acme's waiver argument is defeated by the same logic. If the rights created by contract and by statute are distinct, then what the claimant says or doesn't say in one context is of no consequence in the other. By not bringing up the subject of race in the contractual proceeding, plaintiff waived nothing in this one.

## III. EMPLOYMENT DISCRIMINATION

■■■ There is sufficient basis in the record before me for a reasonable inference that Acme's dismissal of Nichols was the product of mixed motives, both legitimate and illegitimate. When Nichols struck a customer she obviously provided the company with adequate justification for firing her, and on this record there is little doubt that Acme's decision was at least in part predicated on this ground. Yet the fact that Iacaruso, who engaged in behavior far more violent than even punching an elderly customer in the mouth, was merely suspended, suggests that the decision concerning Nichols' fate may have also been impermissibly influenced by Nichols' race.

Section 1981 can be violated only by intentional discrimination. *General Building Contractors Ass'n v. Pennsylvania,* 458 U.S. 375, 391, 102 S.Ct. 3141, 3150, 73 L.Ed.2d 835 (1982). The plaintiff bears the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against her. *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981). The defendant is entitled to summary judgment if it can show that the plaintiff could not carry this burden of proof at trial. In this case, where mixed motives are involved, the defendant can make such a showing in one of two ways: either by demonstrating that the plaintiff would be unable to make out a prima facie case of discrimination; or, if the plaintiff has already established a prima facie case, by demonstrating that the plaintiff could not produce sufficient evidence at the trial that her race played a motivating part in the defendant's employment decision. *Jalil v. Avedel Corp.,* 873 F.2d 701, 707 (3d Cir. 1989).

The allocation of proof in a private, non-class action alleging employment discrimination[1] is governed by the general framework set up by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), as most recently developed in the mixed-motives context by *Price Waterhouse v. Hopkins,* —— U.S. ——, 109 S.Ct. 1775, 104 L.Ed.2d 268 (May

---

**1.** An employment discrimination action brought under section 1981 involves the same elements of proof as a Title VII action. *Roebuck v. Drexel University,* 852 F.2d 715, 726 (3d Cir.1988).

1, 1989) (plurality opinion).[2] The initial burden of proof falls on the plaintiff, who must establish by a preponderance of the evidence a prima facie case of discrimination. To prove a prima facie case of employment discrimination Nichols must establish that (1) she is a member of a protected class; (2) she was the object of adverse action; and (3) such adverse action occurred because of her race. *Hagans v. Budd Co.*, 597 F.Supp. 89, 94 (E.D.Pa. 1984); *Rivers v. Westinghouse Elec. Co.*, 451 F.Supp. 44, 47–48 (E.D.Pa.1978). The answers to the first two prongs of this test are self-evident; the essential question as to the third is whether Nichols was fired "under circumstances which give rise to an inference of unlawful discrimination." *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1094. For the reasons already described, such an inference can reasonably be made from the record as it now stands. Plaintiff has set out a prima facie case.

The plaintiff having succeeded in making a prima facie case, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the employee's discharge. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824; *Jalil*, 873 F.2d at 706. Acme has likewise produced a legitimate explanation for its decision fire Nichols.[3]

The defendant having produced such a legitimate reason, the burden shifts back to the plaintiff to show that race played "a motivating part"[4] in the employment decision. *Price Waterhouse*, at — U.S. —, 109 S.Ct. at 1787. Though the burden of production may have shifted earlier to the defendant—*i.e.*, to produce a legitimate reason for the termination decision—the plaintiff retains the burden of persuasion throughout on the issue of whether race played "a motivating part" in the decision. *Id.*

Should plaintiff adduce sufficient evidence to meet her burden of proof that race played a motivating part in the employment decision, the employer may avoid the employment decision. If she succeeds, defendant may prove by a preponderance of the evidence, by way of an affirmative defense, that the same decision would have been made even if race had not been taken into account.

Because the allocations of proof and, indeed, the nature of the proofs themselves, depend on how the case is characterized, "[a]t some point in the proceedings, of course, the District Court must decide whether a particular case involves mixed motives." *Price Waterhouse*, at — U.S. —, 109 S.Ct. at 1789. As noted earlier, I find that the evidence of record supports a reasonable inference that the defendant's decision to terminate plaintiff's employment was based on a mixture of legitimate and illegitimate considerations.

---

**2.** *McDonnell Douglas* and *Burdine* were "pretext" cases, that is, cases in which the employee argued that the legitimate reason stated by the employer for the employment decision was pretextual and not in fact the real reason for the decision. In *Price Waterhouse*, the employee argued that the employment decision did not stem from a single source but was rather the product of a mixture of legitimate and illegitimate motives. Because "the premise of [a pretext case] is that *either* a legitimate *or* an illegitimate set of considerations led to the challenged decision," *Price Waterhouse*, at — U.S. —, 109 S.Ct. at 1789, whereas a mixed motive case involves a tangle of both, the allocations of proof in the two kinds of cases are somewhat different.

In both pretext and mixed motive cases, the initial burden of proof is on the plaintiff to establish a prima facie case. In both cases also, the burden of production then shifts back to the defendant to give a legitimate reason for the employment decision. The respective burdens are different from this point forward, however. In a pretext case, the plaintiff must then prove by a preponderance of the evidence "that the alleged reasons proffered by the defendant were pretextual and that the defendant intentionally discriminated against the plaintiff." *Jalil*, at 706, citing *Burdine*, 450 U.S. at 252–53, 101 S.Ct. at 1093. No affirmative defense is made available to the defendant. In a mixed motive case, on the other hand, as explained *infra*, the plaintiff must prove by a preponderance of the evidence that race played a motivating factor in

**3.** The *Price Waterhouse* plurality has observed that "[t]he very premise of a mixed-motives case is that a legitimate reason was present." *Price Waterhouse*, — U.S. —, 109 S.Ct. at 1791. My finding as to the legitimacy of Acme's proffered explanation is a necessary basis for the finding that this is a mixed-motives case, *see* n. 1, *supra*.

**4.** "In saying that [race] played a motivating part in an employment decision, we mean that, if we asked the employer at the moment of the decision what its reasons were and if we received a truthful response, one of those reasons would be that the ... employee was [black]." *Price Waterhouse*, at — U.S. —, 109 S.Ct. at 1790.

liability only by in turn proving by a preponderance of the evidence that it would have made the same decision even if it had not taken the plaintiff's race into account. This burden is in the nature of an affirmative defense.[5]

In sum, the plaintiff must persuade the factfinder on one point, *i.e.*, that race was taken into account, and then the employer, if it wishes to prevail, must persuade it on another, *i.e.*, that the same decision would have been made even if race had not been taken into account. *Id.* "An employer may not ... prevail in a mixed-motives case by offering a legitimate and sufficient reason for its decision if that reason did not motivate it at the time of decision.... The employer instead must show that its legitimate reason, standing alone, would have induced it to make the same decision." *Id.* at — U.S. ——, 109 S.Ct. at 1792.

On this record, the Nichols and Iacaruso incidents in juxtaposition are enough to bring Acme's intent in the Nichols matter into question. "When the defendant's intention has been called into question, the matter is within the sole province of the factfinder." *Jalil,* 873 F.2d at 707. Where, as here, intent is a substantive element of the cause of action, "the principle is particularly apt that courts should not draw factual inferences in favor of the moving party and should not resolve any genuine issues of credibility." *Ness v. Marshall,* 660 F.2d 517, 519 (3d Cir.1981). Summary judgment is inappropriate because the plaintiff has established a prima facie case of employment discrimination and has "counter[ed] the defendant's proffered explanation with evidence raising a factual issue regarding the employer's true motivation for discharge." *Jalil,* 873 F.2d at 707. Whether race played a motivating part in Acme's decision to fire Nichols, and, if it did, whether Acme would have made the same decision in its absence, constitute

genuine issues of material fact. Accordingly, summary judgment will be denied on the employment discrimination claim.

## IV. PENDENT STATE CLAIMS

Plaintiff's complaint alleges four pendent state claims—negligence, defamation, and intentional and negligent infliction of emotional distress—without properly setting forth the elements of each cause of action. In her response to defendant's motion for summary judgment, she has briefed only the defamation and intentional infliction of emotional distress claims. For this reason, the negligence and negligent infliction of emotional distress counts will be deemed dropped and summary judgment will be granted against her on these two claims.

### A. *Intentional Infliction of Emotional Distress*

■ To state a claim for the tort of intentional infliction of emotional distress, the conduct complained of must be of an "extreme or outrageous type." *Cox v. Keystone Carbon Co.,* 861 F.2d 390 (3d Cir.1988), quoting *Rinehimer v. Luzerne County Community College,* 372 Pa.Super. 480, 494, 539 A.2d 1298 (1988). Prior to submitting the claim to the factfinder, the court must determine, "as a matter of law, whether there is sufficient evidence for reasonable persons to find extreme or outrageous conduct." *Chuy v. Philadelphia Eagles Football Club,* 595 F.2d 1265, 1274 (3d Cir.1979). Pennsylvania courts have been willing to permit recovery for this tort only in limited circumstances, where the conduct is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Buczek v. First National Bank of Mifflintown,* 366 Pa.Super. 551, 558, 531 A.2d 1122 (1987).

---

**5.** The *Price Waterhouse* plurality's rule that plaintiff first prove that race played a motivating part in the employment decision and that defendant then counter with proof, by a preponderance of the evidence, that the same decision would have been made in any event, supplants the Third Circuit's "but for" standard in mixed-motives employment discrimination cases. *E.g., Bellissimo v. Westinghouse Elec. Co.,* 764 F.2d 175, 179 (3d Cir.1985), *cert. denied,* 475 U.S. 1035, 106 S.Ct. 1244, 89 L.Ed.2d 353 (1986). *See Price Waterhouse,* at — U.S. ——, 109 S.Ct. at 1784 n. 2.

Only in very instances has conduct in the employment context risen to this necessary level of outrageousness. Federal courts applying Pennsylvania law have failed to find conduct sufficiently outrageous where the employee was deceived into foregoing other employment even though the employer knew that a change in circumstances might require the employee to relocate his home, *Cautilli v. GAF Corp.*, 531 F.Supp. 71 (E.D.Pa.1982), and where the employer premeditatedly tried to pressure the employee to quit by making job conditions more difficult. *Madreperla v. Williard Co.*, 606 F.Supp. 874 (E.D.Pa.1985). Only in cases where the employer has both sexually harassed the employee and engaged in retaliatory behavior has the conduct been found outrageous. *E.g., Bowersox v. P.H. Glatfelter Co.*, 677 F.Supp. 307 (M.D.Pa. 1988) (plaintiff sexually harassed, withheld information necessary to perform job, forbidden to talk to others in office, forbidden from answering phone, and followed by employer throughout plant).

In the instant case, Nichols has failed to demonstrate that Acme engaged in outrageous conduct meeting the extremely demanding standard required under Pennsylvania law. Her argument that there is nothing more outrageous than racial discrimination misses the point. Even were the factfinder to find on her section 1981 claim that she was discriminated against, it would not thus be bound to find in her favor, as plaintiff seems to imply, on this pendent claim. Racial discrimination alone, like sexual harassment alone, does not state a claim for intentional infliction of emotional distress. Neither, by itself, does the employee's bare assertion that she has been depressed since losing her job. Nichols has charged no individual employee of Acme with harassing her. Though there is a factual dispute concerning the true intentions behind Acme's action, the reasons offered by Acme for firing Nichols are legitimate. Under these circumstances, I find as a matter of law that there is insufficient evidence for reasonable persons to find that Acme behaved in an extreme or outrageous manner. Therefore summary judgment against plaintiff will be granted on the claim charging intentional infliction of emotional distress.

## B. *Defamation*

It is unclear from the complaint what statements of defendant are alleged to constitute grounds for a defamation action. However, plaintiff's response to defendant's motion for summary judgment refers specifically to the answer in a questionaire apparently prepared by an Acme managerial employee named Agnes O'Neill for submission to the Unemployment Compensation Board of Review and the Philadelphia County Assistance Office. Plaintiff's Brief, Exhibit 10. In response to the question: "Explain fully the circumstances which provoked the discharge," the Acme employee wrote: "Discharged—disregard of standard of behavior employer has right to expect. Punched customer in mouth. Claimant aware of rules re: customers."

Plaintiff does not dispute the fact that she punched an elderly customer in the mouth and that she was aware of company rules regarding the standard of behavior to be expected of employees towards customers. While as a factual matter it is possible that disregard of company rules was not the ultimate cause of plaintiff's discharge, the potentially defamatory content of this communication—that Nichols beat up a customer—is admittedly true. Under Pennsylvania law, truth is an absolute defense to an allegation of defamation, 42 Pa.Cons.Stat.Ann. § 8343(b)(1) (Purdon 1982). *See Agriss v. Roadway Express, Inc.*, 334 Pa.Super. 295, 304, 483 A.2d 456 (1984). Plaintiff has therefore failed to state an actionable defamation claim as a matter of law. Summary judgment against plaintiff on this claim will accordingly be granted.

An appropriate order follows.

## ORDER

AND NOW, this 10th day of May, 1989, upon consideration of defendant's motion for summary judgment and plaintiff's response thereto, and for the reasons set

forth in the accompanying memorandum, it is hereby ORDERED as follows:

1. The motion is DENIED as to plaintiff's employment discrimination claim.

2. The motion is GRANTED as to plaintiff's pendent state claims.

3. Defendant's request for attorney's fees is DENIED, with leave to renew at the appropriate time.