MONO–THERM INDUSTRIES, INCOR-
PORATED and Con-Serv, a Division of
Bay State Gas Company, Petitioners,

v.

FEDERAL TRADE COMMISSION,
Respondent.

No. 80–2113.

United States Court of Appeals,
Tenth Circuit.

Submitted Jan. 28, 1981.

Decided July 14, 1981.

William J. Kenney of William J. Kenney
& Associates, John P. Wintrol and Freder-

ick H. Graefe of Perito, Duerk, Carlson & Pinco, P. C., Washington, D. C., Steven W. Hale and Paul Barrett of Cable, Barrett, Langenbach & McInerney, Seattle, Wash., for petitioners.

James H. Sneed, Acting Gen. Counsel, Howard E. Shapiro, Deputy Gen. Counsel, W. Dennis Cross, Asst. Gen. Counsel, and Theodore H. Hoppock, Atty., F. T. C., Washington, D. C., Paul Petruccelli, Michael L. Rodemeyer and Kent C. Howerton, Attys., Bureau of Consumer Protection, F. T. C., Washington, D. C., of Counsel, for respondent.

Before DOYLE, LOGAN and SEYMOUR, Circuit Judges.

SEYMOUR, Circuit Judge.

After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. *See* Fed.R. App.P. 34(a); Tenth Cir.R. 10(e). The cause is therefore ordered submitted without oral argument.

The FTC has moved to dismiss as untimely a petition filed by Mono-Therm Industries, Inc. and Con-Serv, a Division of Bay State Gas Co. (collectively "Mono-Therm"), for review of a trade regulation rule promulgated by the FTC under section 18 of the Federal Trade Commission Act, 15 U.S.C. § 57a.[1] The challenged rule, entitled "Labeling and Advertising of Home Insulation" and commonly known as "the R-Value Rule," governs the labeling and advertising of home insulation products. It appeared in the Federal Register on August 27, 1979. *See* 44 Fed.Reg. 50,218–45 (1979) (codified at 16 C.F.R. § 460 (1980)). By agency regulation, a rule is deemed promulgated four days after publication. *See* 16 C.F.R. § 1.14(d) (1980); *see also id.* § 1.26(d). Thus, the promulgation date for the R-Value Rule is August 31, 1979.

Under 15 U.S.C. § 57a(e)(1)(A), a petition for judicial review of a section 57a rule must be filed within sixty days after promulgation. The only petitions for review filed within sixty days of August 31, 1979 were those of Johns-Manville Corporation, Certanteed Products, and certain others. *See generally Johns-Manville Corp. v. FTC*, No. 79–1955, (10th Cir., petition filed Aug. 31, 1979). Mono-Therm did not file a review petition until September 26, 1980. It did so in the Ninth Circuit Court of Appeals, together with an emergency motion to stay the Rule's effective date, which by then had been set for September 29, 1980. *See* 45 Fed.Reg. 54,702 (1980). The Ninth Circuit denied the stay motion and transferred the entire matter to this court pursuant to 28 U.S.C. § 2112.

Mono-Therm renewed its stay motion in this court and requested further emergency relief from FTC enforcement during the pendency of this appeal. On March 24, 1981, however, the FTC tentatively decided to grant certain cellulose producers, Mono-Therm among them, a partial exemption from the requirements of 16 C.F.R. § 460.5, the essential portion of the R-Value Rule at issue here. *See* 46 Fed. Reg. 18,307, 29,256 (1981). This renders moot Mono-Therm's present request for emergency relief, so that what remains before this court are Mono-Therm's review petition and the FTC's dismissal motion for lack of subject-matter jurisdiction.

Mono-Therm's review petition is clearly untimely unless actions taken by the FTC within sixty days prior to September 26, 1980 amount to rulemaking, because 15 U.S.C. § 57a(e)(1)(A) vests the court of appeals with jurisdiction to review only "rules." Contrary to Mono-Therm's arguments, the events between August 31, 1979, when the R-Value Rule was promulgated, and August 15, 1980, the date Mono-Therm contends the rule was *finally* promulgated, fail to show any amendatory rulemaking by

---

1. Congress enacted section 18 in 1975 as part of the Magnuson-Moss Warranty—Federal Trade Commission Improvement Act, Pub. L.No. 93–637, sec. 202(a), 88 Stat. 2193 (1975).

the FTC. Consequently, we must dismiss Mono-Therm's review petition as jurisdictionally out of time under 15 U.S.C. § 57a(e)(1)(A).

When the R-Value Rule appeared in the Federal Register in August 1979, its primary purpose was described as follows:

"The primary purpose of the Rule being promulgated today is to correct the failure of the home insulation marketplace to provide . . . essential pre-purchase information to the consumer [for home insulation products]. The information will give consumers an opportunity to compare relative insulating efficiencies, to select the product with the greatest efficiency and potential for energy savings, to make a cost-effective purchase, and to consider the main variables limiting insulation effectiveness and realization of claimed energy savings."

44 Fed.Reg. 50,218 (1979). One of those variables limiting insulation effectiveness, and the one at the heart of the present controversy, is "settled density" for loose-fill insulation products.

"[L]oose-fill cellulosic and mineral wool materials always settle in attics, and will also settle in walls if not installed to the proper density. This settling reduces the R-value [2] of the insulated area."

44 Fed.Reg. 50,228 (1979) (footnote omitted). To prevent this from becoming a source of deception for the consumer, 16 C.F.R. § 460.5 was written to require that R-values for loose-fill materials be tested at "settled density":

"460.5 R-value tests

"R-values measure resistance to heat flow. R-values given in labels, fact sheets, ads, or other promotional materials must be based on tests done under the methods listed below. They were designed by the American Society of Testing and Materials (ASTM). The test methods are:

" . . .

"(2) For cellulose, the tests must be done at the settled density determined under GSA Specification HH–I–515D.

"(3) For loose-fill mineral wool, the tests must be done on samples that fully reflect the effect of settling on the product's R-value. When a settled density procedure becomes part of a final GSA Specification for loose-fill mineral wool, the tests must be done at the settled density determined under the GSA Specification."

16 C.F.R. § 460.5(a)(2), (3) (1980).

Mono-Therm produces and sells only cellulose insulation. The testing procedure for this material in General Services Administration Specification HH–I–515D is commonly known as the "drop test." Regarding its treatment of cellulose versus mineral wool materials, the FTC explained:

"This settled density test [the 'drop test'] for cellulose represents a significant technological advance in the art of insulation testing. . . .

"No final settled density testing procedure has yet been accepted for loose-fill mineral wool. However, the mineral wool manufacturers contend that the coverage charts for their loose-fills take settling into account, and that if the coverage information is followed, the consumer will attain the represented R-value. Under these circumstances, *the Commission is presently imposing a general requirement that loose-fill mineral wool R-values be based on tests that take the adverse effects of settling into account.* In addition, section 460.5(a) of the Rule states that as soon as a settled density test for loose-fill mineral wool becomes part of a final GSA Specification, R-value tests for that product must be done at the settled density determined under the GSA Specification."

44 Fed.Reg. 54,228 (1979) (emphasis added) (footnotes omitted).

---

**2.** R-value "is a measure of insulating power, the higher the R-value, the greater the insulating power." 44 Fed.Reg. 50,218 (1979).

Thus, the August 1979 promulgation of the R-Value Rule reflects a contemplation that the General Services Administration would adopt some specification in the future and that a settled-density testing procedure for mineral wool insulation would be included in such specification. Mono-Therm contends that the FTC assured it, throughout the rulemaking proceeding and thereafter, that the Rule would not go into effect before the GSA adopted the contemplated specification. Whatever the merit of that contention, however, such specifications did not materialize before the FTC finally announced about a year later, on August 15, 1980, that section 460.5 would become effective on September 29, 1980. *See* 45 Fed.Reg. 54,702 (1980).

The effective date of the R-Value Rule had originally been announced as November 30, 1979. But this was stayed first by the FTC itself and then by Congress, until May 31, 1980. *See id.* In early June 1980, the FTC invited public comment on its proposal to further stay certain provisions of the R-Value Rule, other than section 460.5, in connection with the *Johns-Manville* appeal, No. 79–1955 (10th Cir., petition filed Aug. 31, 1979). On August 15, 1980, the FTC announced that provisions not stayed in connection with that appeal would become effective September 29, 1980.

Mono-Therm reacted by submitting to the FTC a petition "to Stay the Commission's Rule on Home Insulation for the Purpose of Taking Additional Evidence." In a lengthy letter, the FTC on September 25, 1980 denied this petition in all respects. Mono-Therm's instant appeal followed.

Mono-Therm's review petition, as amplified by its filings in this court, claims essentially that the R-Value Rule unfairly discriminates against cellulose producers like Mono-Therm and in favor of its competitors, mineral wool producers. More specifically, Mono-Therm contends that the rule, as finally made effective, places cellulose producers at a competitive disadvantage relative to mineral wool producers because

section 460.5 unfairly imposes disparate testing requirements on each group regarding settled density; section 460.6 does the same for representative thickness testing; and section 460.12(b) unfairly imposes disparate disclosure requirements. Mono-Therm also contends that the rulemaking proceeding on the R-Value Rule was tainted by improper *ex parte* communications between the FTC and others, and by the FTC's improper delegation of its rulemaking authority to other federal agencies.

In support of its claim that this court has jurisdiction to consider all these matters, Mono-Therm raises essentially two contentions: first, FTC action in August 1980 amounted to an amendment of the R-Value Rule under 15 U.S.C. § 57a(d)(2)(B), (e)(1)(A), and second, the FTC's September 1980 refusal to reopen the rulemaking record is in any event judicially reviewable in this court for abuse of discretion under the Administrative Procedure Act. Neither contention is correct.

▆▆▆ Regarding the first contention, Mono-Therm argues that even though the R-Value Rule may have been originally promulgated in August 1979, it was effectively amended when no GSA specification materialized, as expressly contemplated by section 460.5(a)(3), to impose the same settled-density testing requirement on mineral wool insulation as section 460.5(a)(2) imposed on cellulose. Mono-Therm contends that the FTC had assured such parity would be achieved before section 460.5 became effective, so that the FTC's August 15, 1980 announcement effectively worked an amendment to the R-Value Rule, which under section 57a(d)(2)(B) started the 60-day period anew. Under this view, Mono-Therm's review petition filed September 26, 1980 would be timely. The flaw in this view, however, is that Mono-Therm knew as of August 1979 what the R-Value Rule said; the text of section 460.5 was not altered between August 31, 1979 and August 15, 1980. Whatever disparity may inhere in the section was just as apparent in August

1979 as in August 1980. Admittedly, section 460.5(a)(3) has a built-in gap that looks to the GSA to fill in the testing procedure that mineral wool producers must conduct for settled density. The gap notwithstanding, mineral wool producers are required to "fully reflect the effect of settling" on their products' R-value. If this was unfair, or even simply too vague, section 460.5 was subject to challenge in August 1979. *See* 15 U.S.C. § 57a(a)(1)(B) (conferring power on FTC to prescribe "rules which define *with specificity* acts or practices which are unfair ..." (emphasis added)); *Katharine Gibbs School, Inc. v. FTC*, 612 F.2d 658, 662 (2d Cir. 1979) (challenge sustained against FTC rule for lack of adequate specificity). Sections 460.6 and 460.12 were subject to challenge *a fortiori* because these sections incorporate no gaps into their requirements.

The only FTC actions regarding the R-Value Rule between August 1979 and August 1980 were administrative stays of the Rule's effective date. Such FTC action is not reviewable in this court under 15 U.S.C. § 57a(e), for it is not rulemaking. In addition, nothing in section 57a(e) suggests that the effective date of a promulgated rule triggers anew the 60-day appeal period that began on the promulgation date. Rather, the statute says clearly that a review petition, to be timely, must follow within 60 days after the promulgation date. Thus, administrative stays of a rule's effective date neither toll nor reset the running of the appeal period for an FTC rule that is otherwise reviewable.

Mono-Therm itself recognizes that the R-Value Rule was subject to judicial review in August 1979. *See* Affidavit of Noel W. Lane, Jr., at ¶ 4, p. 2 (Sept. 19, 1980) (Lane aware as early as Aug. 31, 1979, of asserted disparity in testing requirements for cellulose versus mineral wool). Mono-Therm claims, however, that it believed it "unnecessary and contrary to their best interests to seek either judicial or legislative review of the Rule" because the FTC promised parity in testing requirements, presumably via the GSA specification, before making the Rule effective. *See* Supplemental Petition for Emergency Stay ¶ 6 (10th Cir., filed Oct. 23, 1980). Whatever the promises, if any, they could not toll the 60-day period of 15 U.S.C. § 57a(e)(1)(A). Mono-Therm's present position is somewhat analogous to that of the petitioner in *Johnson v. Railway Express Agency*, 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975), who let the limitations period run on his civil rights action under 42 U.S.C. § 1981 because he apparently believed it more in his interest to pursue an action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. When he finally tried to pursue his by then time-barred § 1981 action, the Supreme Court repelled his effort:

"Petitioner freely concedes that he could have filed his § 1981 action at any time after his cause of action accrued; in fact, we understand him to claim an unfettered right so to do. Thus, in a very real sense, petitioner has slept on his § 1981 rights. The fact that his slumber may have been induced by faith in the adequacy of his Title VII remedy is of little relevance inasmuch as the two remedies are truly independent."

*Id.* at 466, 95 S.Ct. at 1723. Here, Mono-Therm slept on its § 57a(e)(1) rights. Whatever the adequacy of amicable understandings with the FTC, they represent a remedy "truly independent" of time-circumscribed judicial review. In sum, Mono-Therm's September 26, 1980 review petition, filed more than a year after the R-Value Rule was promulgated, does not vest this court with jurisdiction to consider its claims.

■ Mono-Therm's second contention, that the FTC's September 25, 1980 refusal to reopen the record is reviewable in this court under the Administrative Procedure Act, 5 U.S.C. § 701 et seq., is also incorrect. The APA does not provide an independent basis of subject matter jurisdiction. *Califano v. Sanders*, 430 U.S. 99, 105, 97 S.Ct. 980, 984, 51 L.Ed.2d 192 (1977). In the case of a timely petition directed to the court of appeals for review of an FTC rule, the independent jurisdictional predicate comes from 15 U.S.C. § 57a. But Mono-Therm's untimeliness precludes that here.

Had the FTC actually amended the R-Value Rule in response to Mono-Therm's request,[3] Mono-Therm would have had sixty days in which to appeal the amended rule. *See* 15 U.S.C. § 57a(d)(2)(B). But the FTC refused to even reopen the rule-making proceeding. Such a decision is not reviewable in this court. *Cf. Kennecott Copper Corp. v. FTC*, 542 F.2d 801, 803–04 (10th Cir. 1976) (FTC's refusal to reopen or modify divestiture order under 15 U.S.C. § 21 not appealable); *Love Television & Stereo Rental, Inc.*, 498 F.2d 1088 (5th Cir. 1974) (per curiam) (same; cease and desist order); *Rettinger v. FTC*, 392 F.2d 454, 457 (2d Cir. 1968) (same; consent order under 15 U.S.C. § 45); *Martin Marietta Corp. v. FTC*, 376 F.2d 430, 433–34 (7th Cir.) (same; divestiture and consent order under 15 U.S.C. §§ 21, 45), *cert. denied*, 389 U.S. 923, 88 S.Ct. 237, 19 L.Ed.2d 265 (1967).

In view of the foregoing, Mono-Therm's review petition is jurisdictionally out of time and must be dismissed.

---

**3.** 15 U.S.C. § 57a(b) provides that when the FTC is engaged in rulemaking, "it shall proceed in accordance with" 5 U.S.C. § 553 of the APA. Section 553(e) says, "Each agency shall give an interested person the right to petition for the issuance, amendment, or repeal of a rule." An unreasonable refusal to engage in rulemaking is generally reviewable in the district courts under the APA and federal question jurisdiction. *See generally Nader v. FAA*, 440 F.2d 292 (D.C.Cir.1971); 1 K. Davis, Administrative Law Treatise § 6.28, at 586–88 (2d ed. 1978); *see also Association of Nat'l Advertisers, Inc. v. FTC*, 617 F.2d 611, 614–16, 618–22 (D.C.Cir. 1979) (discussion of jurisdictional relationship between APA and 15 U.S.C. § 57a).