840 F.2d 19
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Douglas O. WOODLEY and Alfred L. Terry, Jr., Plaintiffs-Appellants,
v.
OHIO EDISON COMPANY, Defendant-Appellee.
 No. 87-3178.
 United States Court of Appeals, Sixth Circuit.
 Feb. 22, 1988.
 
 Before DAVID A. NELSON and BOGGS, Circuit Judges, and CHARLES M. ALLEN, District Judge.*
 PER CURIAM.
 
 
 1
 The plaintiffs, two black employees of defendant Ohio Edison Company, are appealing the dismissal of an action they brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. Secs. 2000e et seq. Their complaint alleged that because of their race they were denied the opportunity to "bump" white employees who had less seniority. Noting that the lawsuit would require a determination of whether plaintiffs actually had such bumping rights under the governing collective-bargaining agreement, the district court dismissed the suit on the theory that the meaning of collective-bargaining provisions would have to be determined in the first instance by an arbitrator.
 
 
 2
 In Alexander v. Gardner-Denver Co., 415 U.S. 36, 59-60 (1974), the Supreme Court held "that the federal policy favoring arbitration of labor disputes and the federal policy against discriminatory practices can best be accommodated by permitting an employee to pursue fully both his remedy under the grievance-arbitration clause of a collective-bargaining agreement and his cause of action under Title VII." In the case at bar the district court distinguished Alexander on the ground that in that case there had been no need to interpret the collective bargaining agreement. In the present case, by contrast, the district judge believed that if he retained the case his "first order of business" would necessarily be to interpret the collective-bargaining agreement--and if he were to do so, it "would violate the well established federal policy promoting industrial stabilization through the use of arbitration for labor disputes." Because we believe that Alexander and its progeny are controlling here, we shall reverse the order of dismissal.
 
 
 3
 * Plaintiffs were employed on the second shift at Ohio Edison's Main Street facility in Akron, Ohio. When defendant decided to abolish that shift, plaintiffs expressed a desire to bump certain white employees on the first shift. They claim that they were denied the right to do so because of their race.
 
 
 4
 Taking the position that the applicable collective-bargaining agreement did not give plaintiffs the bumping rights they sought to exercise, Ohio Edison transferred plaintiffs to another job site. Plaintiffs brought suit in district court and subsequently filed a grievance under the procedure established by the collective-bargaining agreement. Before arbitration could be held, however, plaintiffs abandoned the grievance "due to the length of time that it would take the grievance to be heard."
 
 
 5
 Defendant Ohio Edison moved for summary judgment on two grounds. First, it claimed that the court lacked subject matter jurisdiction because plaintiffs' claim was anchored in allegations that Ohio Edison violated the collective bargaining agreement. Second, it claimed that there was no prima facie case of racial discrimination. Although plaintiffs filed affidavits responding to the second point, the district court found it unnecessary to reach that issue.
 
 
 6
 The district court concluded that plaintiffs' claim required an interpretation of the collective-bargaining agreement, and that under the Supreme Court's decisions in the Steelworkers trilogy ((363 U.S. 564 (1960); 363 U.S. 574 (1960), and 363 U.S. 593 (1960)) and Textile Workers Union v. Lincoln Mills, (353 U.S. 448 (1957)), the district court had no jurisdiction to interpret the collective-bargaining agreement. The district court distinguished Alexander v. Gardner-Denver Co., as noted above, on the ground that "none of [the collective-bargaining agreement's] provisions were [sic] at issue" in Alexander.
 
 II
 
 7
 We disagree. In Alexander a black maintenance employee had been told that he was being discharged for producing too many defective or unusable parts. The employee filed a grievance, and an arbitrator ruled that the employee had been discharged for "just cause." Upon starting the grievance process, the employee also filed a complaint with the Equal Employment Opportunity Commission pursuant to Title VII. After receiving a right-to-sue letter, the employee instituted suit in district court; the court granted summary judgment for the defendant because the claim of racial discrimination had been resolved adversely to the petitioner by the arbitrator. The Supreme Court held that the district court had erred:
 
 
 8
 "[T]he legislative history of Title VII manifests a congressional intent to allow an individual to pursue independently his rights under both Title VII and other applicable state and federal statutes. The clear inference is that Title VII was designed to supplement, rather than supplant, existing laws and institutions relating to employment discrimination. In sum, Title VII's purpose and procedures strongly suggest that an individual does not forfeit his private cause of action if he first pursues his grievance to final arbitration under the nondiscrimination clause of a collective-bargaining agreement." 415 U.S. at 48-49 (footnote omitted).
 
 
 9
 The collective-bargaining agreement in Alexander contained a nondiscrimination clause that was directly at issue and had actually been the subject of a completed arbitration proceeding. The Supreme Court specifically found that federal courts were not bound by the arbitrator's interpretation of the collective bargaining agreement, and warned that "there can be no prospective waiver of an employee's rights under Title VII." Id. at 51.
 
 
 10
 The Alexander court stressed, moreover, that its decision would not eliminate incentives for employers and employees to resort to arbitration (415 U.S. at 54-55)--and if construction of the collective-bargaining agreement by an arbitrator were a condition precedent to filing a Title VII action, there would have been no need for the Supreme Court to be concerned about that issue.
 
 
 11
 Implicit in the district court's reasoning in the case at bar is the idea that if an arbitrator were to find that defendant could have allowed the plaintiffs to bump, they would be entitled to file suit under Title VII at that point and try to show that they had been denied the right to bump because of their race. But imposition of this "arbitration-first" requirement would be contrary to the Supreme Court's reasoning in both Alexander and International Union of Electrical, Radio and Machine Workers, Local 790 v. Robbins & Myers, Inc., 429 U.S. 229 (1976). In Robbins & Myers a black woman had been fired because her employer claimed she had failed to comply with procedures established by a collective-bargaining agreement with respect to leaves of absence. She filed a grievance and an arbitrator ruled against her. Thereafter she commenced proceedings under Title VII. The Supreme Court held that resort to the arbitration procedures in the collective-bargaining agreement did not toll Title VII's statute of limitations. As the Court explained,
 
 
 12
 "Petitioners advance as a corollary argument for tolling the premise that substantial policy considerations, based on the central role of arbitration in labor-management relations, see Steelworkers v. American Mfg. Co., 363 U S 564, 4 L Ed 2d 1403, 80 S Ct 1343 (1960); Textile Workers v. Lincoln Mills, 353 U S 448, 1 L Ed 2d 972, 77 S Ct 912 (1957), also dictate a finding that the Title VII limitations period is tolled in this situation. Similar arguments by the employer in Alexander v. Gardner-Denver Co., urging the superiority and pre-eminence of the arbitration process were rejected by us in that case, and we find the reasoning of that case controlling in rejecting this claim made by petitioners.
 
 
 13
 Petitioners also advance a related argument that the danger of possible conflict between the concurrent pursuit of both collective-bargaining and Title VII remedies should result in tolling the limitations for the latter while the former proceeds to conclusion. Similar arguments to these, albeit relating to 42 USC Sec. 1981 [42 USCS Sec. 1981] and not to private labor agreements, were, however, raised and rejected in Johnson [v. Railway Express Agency, Inc., 421 U.S. 454 (1975).]" 429 U.S. at 238-39.
 
 
 14
 If we were writing on a clean slate, we might very well agree with the district court's thought that the collective-bargaining agreement ought to have been construed by an arbitrator first; but controlling Supreme Court precedent, as we read it, forecloses that conclusion. The order of dismissal is REVERSED, and the case is REMANDED for further proceedings.
 
 
 
 *
 The Honorable Charles M. Allen, United States District Judge for the Western District of Kentucky, sitting by designation