[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-15217
Non-Argument Calendar
_____

D.C. Docket No. 2:13-cv-14263-JEM


CURTIS SHERROD,
In Proper Person Individually,

                                                        Plaintiff-Appellant,

versus

THE BOARD OF ST. LUCIE COUNTY,
Individually and Officially,
MICHAEL J. LANNON,
individually and officially in his capacity
as Superintendent of SCSB,
BARBARA SLAGA,
individually and officially as Asst. Superintendent
of Student Services and Exceptional Student
Education,
WILLIE MAE CLARK,
individually and officially as Asst. Principal at the
Fort Pierce Regional Detention Center.,
TELISHA A. JONES,
individually and officially as Lead Teacher and
Exceptional Student Education Chair
at the FPRDC, et al.,

                                                        Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(December 11, 2015)

Before ED CARNES, Chief Judge, MARTIN and ANDERSON, Circuit Judges.

PER CURIAM:

Curtis Sherrod's employer denied him a requested medical accommodation, a midyear performance evaluation, and, eventually, a new employment contract. Sherrod says those decisions were made for impermissible discriminatory and retaliatory reasons. A federal district court disagreed and so do we.

The School Board of St. Lucie County (the Board) hired Sherrod, a black man who suffers from lupus, to teach history at the Fort Pierce Regional Detention Center (the School). The Board hired Sherrod in 2007 on an annual contract. He was the only black male teacher at the School.

According to Sherrod, in July 2008, he and some of his colleagues began complaining about his new supervisor, Telisha Jones. Jones and assistant principal Willie Mae Clark allegedly responded to the criticism by harassing the complaining teachers. Stress from the harassment caused Sherrod's lupus to flare up. In December 2008, he asked Maurice Bonner, the director of human resources at the School, to accommodate his lupus by assigning him to a position with a ten-

2

month work year.  Bonner and the School declined the request, repeatedly insisting that the doctor's notes Sherrod provided were inadequate to show that his condition required the accommodation he sought.

On January 29, 2009, Sherrod sent a three-page, single-spaced, typewritten letter to Clark complaining of Jones's "increasingly hostile actions."  The letter was essentially a list of grievances, calling Jones out for everything from failing to attend a Christmas party, to implementing unnecessary and counterproductive classroom reforms, to creating an uncomfortable work environment.  Among his many other complaints about Jones, Sherrod stated in the letter that: "I have heard that at least [Jones's predecessor] did provide services to the ESE[1] students here at this center while to date Mrs. Jones has not deigned to do so.  Furthermore, Mrs. Culver [another administrator at the School] is no longer providing the aforementioned services.  I digress[.]"  That is one of only two documented occasions when Jones complained about the School's failure to provide ESE services.

On March 19, 2009, the School suspended Sherrod with pay for three weeks after learning that he had omitted from his job application information about a legal dispute he had with his former employer, the Palm Beach County School Board.  The School didn't notify Sherrod when it concluded its investigation, nor

---

[1] "ESE" stands for Exceptional Student Education.  In Florida, ESE programs support students with disabilities.

did it tell him it intended to pursue disciplinary action.  He returned to work, as directed, on April 9, 2009.

The School has a policy that teachers receive midyear evaluations from their supervisors.  The evaluations notify teachers of deficiencies in their performances so that teachers may correct the deficiencies in advance of any decision or recommendation affecting their employment.  Sherrod never received his spring 2009 midyear evaluation from the school.  Instead, on May 1, 2009, the School created a personnel action form indicating that it would allow his contract to expire unrenewed on June 30, 2009.

On May 15, 2009, Sherrod wrote another letter to the School's quality assurance auditor complaining about Jones's maladministration and alleging that Jones was retaliating against students and teachers at the School.  The letter included the following paragraph about the School's failure to provide ESE services:

> On or about July 1, 2009 we were informed by Mrs. Jones that: "ESE was no longer face to face."  Therefore accordingly we have not had either an ESE Teacher or Para in our classrooms since July 1, 2009. That is what the young [student] Willie Coleman was attempting to say yesterday when he said something to the effect that: "we need more teachers."

Here, again, the point about ESE was made while complaining about Jones's performance as lead teacher.

On June 9, Sherrod met with School superintendent Michael Lannon to discuss the School's decision not to renew Sherrod's contract.  When he told Lannon that he hadn't been issued a midyear evaluation, Lannon urged him to write an evaluation response highlighting that fact.  Sherrod did so but never got a response from the School, which allowed his contract to expire on June 30, 2009.

Sherrod, proceeding pro se, filed his initial complaint in this lawsuit on July 31, 2013.  It asserted that the Board, Jones, Lannon, Clark, and another School administrator had impermissibly retaliated against Sherrod for voicing his concerns about the School's failure to provide ESE services.  The retaliation alleged in the original complaint was limited to the School's failure to issue Sherrod a midyear evaluation and failure to renew his contract.

Over the following months, Sherrod amended his complaint several times. He added another First Amendment retaliation claim alleging that the Board and several newly-named defendants denied his request for a medical accommodation in retaliation for his having spoken out about the School's failure to provide ESE services.  He also added allegations against various defendants — some old, some new — to the effect that the School had failed to give him a midyear evaluation, failed to notify him of the results of the investigation into his employment application, and failed to renew his contract all on account of his race.  Finally, he added a claim under the Americans with Disabilities Act (ADA), alleging that the

5

School had discriminated against him on the basis of a disability when it failed to accommodate his medical needs.

On the defendants' motion, the district court dismissed as time-barred Sherrod's disability discrimination claim under the ADA. After discovery, the parties cross-moved for summary judgment on the remaining claims. The district court referred the motions to a magistrate judge who issued a report recommending that the court grant the defendants' motion. Sherrod objected to the magistrate's recommendation. The same day Sherrod filed his objections, the district court issued an order adopting the magistrate's report in full. The order noted that the court had reviewed the report for clear error because, so far as it was aware, Sherrod hadn't filed objections. Eight days later, the court sua sponte issued an amended order explaining that, in light of Sherrod's objections, the court had reviewed the record de novo and concluded that the magistrate's report adequately addressed those objections. Thus, the court again adopted the magistrate's report.

Sherrod appeals the dismissal of his ADA discrimination claim and the grant of summary judgment on his remaining claims. At the outset, however, he asserts that, in granting summary judgment, the district court failed to conduct a de novo review of the entire record. Sherrod's only support for the assertion is that the record in this case is big and eight days isn't a lot of time. His argument fails for a few reasons. First, the district court said it reviewed the record de novo and,

6

absent proof otherwise, we take district courts at their word. Second, it isn't true that the district court had the record for only eight days. In its original order adopting the magistrate's report, the court noted that it had "reviewed the entire file and record," and had reached its decision only "[a]fter careful consideration." So the district court was already familiar with the record when it undertook its de novo review of the magistrate's report. In any event, completing de novo review of the relevant part of the record in eight days is not impossible or even improbable.

Our decision in Jeffrey S. by Ernest S. v. State Board of Education, 896 F.2d 507 (11th Cir. 1990), is materially distinguishable in several respects. In Jeffrey S., we vacated a district court's order adopting a magistrate's report because we determined the district court had adopted the report without conducting the statutorily-required de novo review of the record. Our opinion emphasized the district court's admission that it had "relied heavily upon the magistrate's assessment of the evidence and his judgment in drawing reasonable inferences therefrom." Id. at 513. The district court's amended order here, by contrast, included no such statement and expressly disclaimed any reliance on the magistrate's assessments. The district court record in Jeffrey S. was also very different from the one in this case. The Jeffrey S. record included, among other things, the transcript from a six-day hearing, and the defendant's objections

7

spanned 60 pages.  Id.  Here, on the other hand, there's no week-long hearing transcript to review and Sherrod's objections totaled just 17 pages.  And, as we have noted, the district court in this case spent time sifting through the record before it commenced its de novo review.

Sherrod argues that the district court's de novo review was not comprehensive because the court didn't expressly correct the sentence in the report noting that Sherrod had "concede[d] that his job performance during the prior school year was 'sub par.'"  In the first place, the sentence was factually accurate.  Sherrod admitted in his affidavit that he viewed his own performance during the period in question as "sub par."  Even had the statement been objectively inaccurate, moreover, it was made in a parenthetical aside and the magistrate's report didn't mention it again, let alone rely on it.

Turning to the merits, the district court was ultimately correct to grant summary judgment to the defendants on Sherrod's race discrimination claim, even though the reason it gave for doing so was incorrect.  The district court granted summary judgment to the defendants because Sherrod hadn't exhausted available administrative remedies with respect to his race discrimination claim.  But Sherrod brought his race discrimination claim under 42 U.S.C. §§ 1981 and 1983, not Title VII of the Civil Rights Act of 1964.  Unlike a plaintiff proceeding under Title VII, a plaintiff alleging employment discrimination in violation of §§ 1981 and 1983

need not exhaust administrative remedies before suing in federal court.  Johnson v.

Ry. Exp. Agency, Inc., 421 U.S. 454, 460, 95 S. Ct. 1716, 1720 (1975); Hines v.

D'Artois, 531 F.2d 726, 736 (5th Cir. 1976).

Summary judgment was nonetheless appropriate because the record, taken

as a whole, lacks evidence from which a reasonable jury could find that the School

discriminated against Sherrod because of his race.  Sherrod has not produced any

direct evidence of race discrimination by the School.  Instead, he seeks to create an

inference of race discrimination under the familiar McDonnell Douglas

framework.  Assuming for the sake of argument that Sherrod can make out a prima

facie case of discrimination, the defendants have rebutted the resulting

presumption by articulating several nondiscriminatory bases for taking an adverse

employment action against him.  Those include: Sherrod's reluctance to use a

regular roll book or employ daily grading; his violations of the School's

restrictions on teacher cell phone use; his spat with Jones about classroom

coverage procedures; his use of unapproved studio films as teaching aids; and

misrepresentations in his employment application.  Where "a defendant carries its

burden of producing legitimate, nondiscriminatory reasons for its decision," the

burden shifts back to the plaintiff to show that the defendant's proffered reasons

are pretextual, which he may do "either directly by persuading the court that a

discriminatory reason more likely motivated the employer or indirectly by showing

that the employer's proffered explanation is unworthy of credence." Combs v. Plantation Patters, 106 F.3d 1519, 1528 (11th Cir. 1997) (quotations and citations omitted). Sherrod does not dispute the factual bases of the School's proffered reasons for taking adverse employment actions against him. Nor does he offer any reason for disbelieving the School's claims that it made its decisions respecting his employment because of those reasons. Accordingly, Sherrod hasn't rebutted the presumption that the School's stated legitimate reasons were its actual reasons for firing him. His race discrimination claim therefore fails.[2]

We turn to Sherrod's claim that various defendants retaliated against him in violation of the First Amendment for speaking out about the School's failure to provide ESE services. That claim fails because Sherrod has not established that his letters mentioning the School's failure to provide ESE services constituted protected speech. The letters are the only two documented instances of Sherrod complaining about the lack of ESE services. The second letter, sent to the quality assurance auditor on May 15, 2009, was written after the School formally decided,

---

[2] We note in passing that, to the extent Sherrod's race discrimination claim is based on the School's failure to give him a midyear evaluation, he hasn't even made out a prima facie case under McDonnell Douglas. To make out a prima facie case of race discrimination under McDonnell Douglas, a plaintiff must show that his employer subjected him to an "adverse employment action." Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997). An employer's decision only constitutes "adverse employment action" if it affects "a serious and material change in the terms, conditions, or privileges of employment." Davis v. Town of Lake Park, Fla., 245 F.3d 1232, 1239–40 (11th Cir. 2001). Sherrod has not shown how the School's failure to give him a midyear evaluation itself had any effect — let alone a "serious and material" effect — on the terms, conditions, or privileges of his employment.

on May 1, 2009, not to renew Sherrod's contract. That letter thus cannot have caused the non-renewal or any of the earlier actions of which Sherrod complains. The other letter was sent to Clark on January 29, 2009. Almost all of it deals with Sherrod's personal conflict with Jones. Only two sentences in the entire missive even mention ESE, and the next sentence calls those sentences as a "digress[ion]."

A public employee's speech is not protected by the First Amendment when the employee "speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest." Connick v. Meyers, 461 U.S. 138, 146, 103 S. Ct. 1684, 1690 (1983). In evaluating a public employee's First Amendment retaliation claim,

> [a] court must therefore discern the purpose of the employee's speech — that is, whether [he] spoke on behalf of the public as a citizen, or whether the employee spoke for [himself] as an employee. To accomplish this, a court considers the content, form and context of a given statement, as revealed by the whole record. A court may consider the employee's attempts to make the concerns public, along with the employee's motivation in speaking.

Morgan v. Ford, 6 F.3d 750, 754 (11th Cir. 1993) (quotation marks and citations omitted). Taken in the context of the whole letter — and especially in context of the whole record — it's clear that Sherrod's "digress[ion]" about the School's failure to provide ESE services was aimed at advancing his private interest in attacking and undermining Jones, rather than raising issues of public concern. Sherrod made the statement about ESE services in a private letter to a School

administrator, and only for the purpose of establishing that Jones was a bad boss. The mere fact that one of Sherrod's many criticisms of Jones happened to touch on a topic of potential public concern is not enough to transform his stated grievances about his supervisor into constitutionally protected speech. All of Sherrod's First Amendment retaliation claims — whether based on the failure to renew his contract, the failure to accommodate his medical needs, the failure to provide him with notice that the investigation into his employment application had concluded, or the failure to give him a midyear evaluation — fail, because he has not established that the speech at issue was constitutionally protected.[3]

Next we consider Sherrod's claim that the School discriminated against him in violation of the ADA by denying him a reasonable medical accommodation.[4] As the district court ruled, this claim is time-barred. In Florida, a plaintiff alleging discrimination in violation of the ADA must bring his claim within four years of the date on which he learns — or should have learned — of the alleged discriminatory act. Everett v. Cobb Cty. Sch. Dist., 138 F.3d 1407, 1410–11 (11th Cir. 1998). Sherrod's last day at the School was June 30, 2009, but he didn't assert

---

[3] Because we find that Sherrod's speech was not constitutionally protected, we need not address the district court's holding that Sherrod failed to proffer evidence from which a reasonable jury could find that his speech caused the alleged retaliatory conduct.

[4] We note that a claim of discrimination under the ADA is separate and distinct from a claim of retaliation under the ADA. Compare 42 U.S.C. § 12203(a) (ADA's prohibition on retaliation), with 42 U.S.C. § 12112(a) (ADA's prohibition on discrimination). We have already addressed Sherrod's ADA retaliation claim along with his First Amendment retaliation claims. The remainder of this opinion deals exclusively with his discrimination claim.

an ADA discrimination claim until August 20, 2013.  Thus, even if his ADA discrimination claim accrued on his very last day of employment, it was untimely.

There's nothing to Sherrod's argument that his ADA discrimination claim relates back to his original complaint.  A new claim relates back to an earlier pleading only when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out — or attempted to be set out — in the original pleading."  Fed. R. Civ. P. 15(c)(1)(B).  Sherrod's original complaint addressed only the facts underlying his allegation that some of the defendants had retaliated against him for speaking out about the School's failure to provide ESE services.  The original complaint did not mention Sherrod's disability, his request for medical accommodation, the School's denial of that request, or any other conduct, transactions, or occurrences necessary to support his ADA discrimination claim.  It follows that his ADA claim does not arise from the conduct, transactions, or occurrences set out in the original complaint, meaning it does not relate back to the original complaint for purposes of the limitations period.

Sherrod argues that he's entitled to equitable tolling of the statute of limitations.  Equitable tolling is an extraordinary remedy to be applied sparingly, when a plaintiff's untimely filing is due to extraordinary circumstances that are both beyond his control and unavoidable even with diligence.  Arce v. Garcia, 434 F.3d 1254, 1261 (11th Cir. 2006).  Sherrod hasn't alleged any such circumstances.

13

He says his illness interfered with his ability to recognize and file an ADA discrimination claim in this case.  He has not, however, alleged facts — let alone proferred evidence — sufficient to show that his illness made it impossible for him to file an ADA claim against the defendants at <u>any point</u> within the four years following non-renewal of his contract.

Sherrod suggests that the School's repeated failures, after his contract expired, to appoint him to the position for which he requested an accommodation constituted discrete discriminatory acts that reset the statute of limitations clock. But the failure to remedy a prior act of discrimination does not constitute a new act of discrimination for purposes of determining whether a claim is time-barred. <u>Everett</u>, 138 F.3d at 1410.  The ADA discrimination of which Sherrod complains occurred, if at all, when he was denied the requested accommodation at work, not after he was no longer working.

Lastly, Florida's delayed discovery doctrine doesn't apply here.  It applies only to state law claims, and only to cases involving fraud, products liability, professional malpractice, medical malpractice, or intentional torts based on abuse. <u>Davis v. Monahan</u>, 832 So. 2d 708, 709–10 (Fla. 2002).

**AFFIRMED.**

14